# FOR PUBLICATION



FILED
Feb 13 2014, 8:16 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**WILLIAM G. SMOCK**
**MATTHEW A. SHEEHAN**
Terre Haute, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| WENDY THOMPSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 61A01-1305-CR-207 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE PARKE CIRCUIT COURT
The Honorable Sam A. Swaim, Judge
Cause No. 61C01-1201-FD-17

**February 13, 2014**

**OPINION - FOR PUBLICATION**

**VAIDIK, Chief Judge**

## Case Summary

Wendy Thompson appeals her sentence for four counts of Class D felony operating a motor vehicle with a blood-alcohol concentFration of at least 0.08 causing serious bodily injury. She raises two issues on appeal. First, she argues that her sentence exceeds the maximum sentence allowable under the consecutive-sentencing statute because Class D felony operating a motor vehicle with a blood-alcohol concentration of at least 0.08 causing serious bodily injury is not a "crime of violence" within the meaning of Indiana Code section 35-5-1-2(a). Second, she argues that her sentence is inappropriate in light of the nature of the offenses and her character. Finding that Class D felony operating a motor vehicle with a blood-alcohol concentration of at least 0.08 causing serious bodily injury is a "crime of violence" and that Thompson's sentence is appropriate in light of the nature of the offenses and her character, we affirm.

## Facts and Procedural History

In 2012, Thompson lived in Terre Haute, Indiana and her children lived with their father in Avon. On the evening of January 21, 2012, Thompson was returning to Terre Haute after visiting her son for the weekend. It was her first unsupervised visit with him in eight months.

On the way back to Terre Haute, Thompson stopped at a liquor store, purchased alcoholic beverages, and began to drink alcohol while driving. She also took a benzodiazepine pill, which intensifies the effect of alcohol. Thompson was driving her blue Nissan SUV on U.S. Highway 36 in Parke County, Indiana.

John Wilson was also driving on Highway 36 that day. As he was driving, he noticed Thompson approaching quickly from behind. As Thompson passed him, Thompson used her left turn signal when moving from the left passing lane back to the right lane. After passing Wilson, she passed another car in front of him, using her right turn signal to move from the right lane to the left lane and then her left turn signal to move from the left lane to the right lane. Wilson estimated that Thompson was driving at approximately eighty-five miles per hour.

Shortly after Thompson passed Wilson, Thompson approached a green Ford Escort driven by Tina Redman. While Thompson was behind Redman, Redman slowed down for an Amish wagon in front of her. Thompson did not slow down and rear-ended Redman's car. According to Wilson, who saw the accident, Thompson did not apply her brakes before hitting Redman's car. The State Police reconstruction report determined that Thompson was traveling "at least 34 miles per hour." Tr. p. 48.[1] Redman's car slid down the guardrail and hit a white Jeep Cherokee driving in the opposite direction.

After seeing the accident, Wilson stopped to help the people injured. He went to Redman's car and pulled the windows outward so the glass would not break toward the people inside. Redman and her daughter, H.M., were inside the car. H.M. was screaming and crying and was covered in her mother's blood. Wilson also noticed that Redman's blood covered the floor of the car. He cut H.M.'s seatbelt but was unable to remove her. H.M., who had been riding in the front passenger seat of Redman's car, suffered significant

---

[1] We note that the court reporter for the trial court did not consecutively number the pages of the two transcripts we received. Indiana Appellate Rule 28(A)(2) states: "The pages of the Transcript shall be numbered consecutively regardless of the number of volumes the Transcript requires." All citations to the transcript are to the April 15, 2013 transcript.

3

injuries to her right ring finger, requiring two surgeries to repair. Her legs were also severely bruised, making it difficult for her to walk for about one month after the accident.

Redman was unconscious and had to be airlifted to Methodist Hospital in Indianapolis. She remained in a coma for fourteen days due to traumatic head and brain injuries. She had "multiple skull fractures along with a severe brain bleed, fractured mastoid processes, a ruptured ear drum, and fractured cheek bones." *Id.* at 43. She also suffered a partial loss of sight in both eyes, loss of balance, constant headaches, and is still unable to drive or continue working as a hairdresser.

Kimberly Parsons and Beth Fiandt, the occupants of the white Jeep Cherokee, were also seriously injured. Parsons was taken to the hospital in a neck brace and continues to have shoulder problems. Ex. 3. Fiandt "missed a week of work during her recovery and experienced acute pain for some time afterward." Ex. 2. Her Jeep Cherokee was also destroyed. *Id.*

At the scene of the accident, Wilson noticed Thompson laughing and talking on her cellular phone. According to Wilson, it was "[n]ot like hysterical laughing but a little bit of childish giggling -- giggling going on." Tr. p. 13.

Thompson was also injured in the collision and taken to St. Vincent Clay Hospital. At the hospital, Thompson's blood was tested. Her blood-alcohol concentration was 0.25, over three-times the legal limit. *Id.* at 64. She also tested positive for benzodiazepines, but she has a valid prescription for them. *Id.* at 65-66.

The State charged Thompson with eight felonies. Counts 1, 2, 3, and 4 were for Class D felony causing serious bodily injury when operating a motor vehicle with a blood-

alcohol concentration of at least 0.08 under Indiana Code section 9-30-5-4(a)(1) and Counts 5, 6, 7, and 8 were for Class D felony causing serious bodily injury when operating a motor vehicle while intoxicated under Indiana Code section 9-30-5-4(a)(3). Appellant's App. p. 1-8. Thompson entered into a plea agreement with the State and pled guilty to Counts 1, 2, 3, and 4. *Id.* at 9. In exchange for Thompson's guilty plea, the State agreed to recommend that:

> [t]he length and terms of [Thompson's] sentence (including whether or not to run the sentences consecutively) shall be left to the Court's discretion. However, [Thompson's] sentence on Count 3 shall be six months suspended to probation, and the sentence on Count 4 shall be six months suspended to probation . . . . The State further moves the Court to dismiss any remaining count(s) upon sentencing [Thompson].

*Id.* at 9. The State also dismissed the charges for Counts 5, 6, 7, and 8. *Id.*

Thompson testified at the sentencing hearing. She explained that she had begun abusing alcohol because she was molested by a member of her religious order when she was seven years old and had been suppressing her feelings about the event. Although she had received treatment for alcohol abuse before, she relapsed after dropping her son off that day. While awaiting sentencing in this case, she wore an alcohol-monitoring bracelet. She successfully abstained from drinking and sought psychological treatment from Dr. Michael Murphy, a clinical psychologist and professor at Indiana State University.

Dr. Murphy also testified at the sentencing hearing. According to Dr. Murphy, Thompson has anxiety disorder with adjustment disorder and alcoholism. Tr. p. 72. When explaining Thompson's anxiety disorder, Dr. Murphy explained that Thompson "was very, very concerned, very upset, very worried and there was also a good bit of depression when [Thompson] presented and it was all related to the accident . . . ." *Id.* Dr. Murphy believed

5

Thompson was making progress because "she obviously has not had any recidivism with regard to alcohol[,] . . . she has been attending the AA meetings[,] and she has been adhering to all of the expectations that we set within therapy." *Id.* at 73. According to Dr. Murphy, incarceration would not advance Thompson's ability to overcome her alcoholism or rebuild her life. *Id.* at 76.

In determining Thompson's sentence, the court identified three aggravators: (1) the harm, injury, or loss suffered by the victims in Counts 1 and 2; (2) the amount of alcohol Thompson consumed and the fact that one of her prescribed medications would intensify the effect of alcohol consumption; and (3) Thompson's history of delinquent or criminal activity, which includes a previous conviction for driving while intoxicated. *Id.* at 98-99; Appellant's App. p. 12. The court also found two mitigators: (1) Thompson had shown that she would respond well to short-term imprisonment or probation and (2) Thompson had only one previous conviction. Tr. p. 99; Appellant's App. p. 12. The court concluded that the aggravators outweighed the mitigators.

The trial court sentenced Thompson to three years for Count I and three years for Count II. Appellant's App. p. 12. The court also sentenced Thompson to 180 days for Count 3 and 180 days for Count 4. *Id.* at 12-13.

The State requested that Thompson's sentences for Counts 1 and 2 be imposed consecutively for a total executed sentence of six years in the Department of Correction. Tr. p. 89. Thompson disagreed, citing the restrictions imposed on consecutive sentences by Indiana Code section 35-50-1-2(c). *Id.* at 92-93. The State responded that the counts

to which Thompson pled guilty were "crimes of violence" pursuant to Section 35-50-1-2(c).

The court ordered the sentences to be served consecutively, for a total of seven years. *Id.* The first five years of the sentence was ordered to be executed at the DOC with the remaining two years suspended to probation. *Id.* The court also ordered Thompson to pay $9,777.92 to Redman and $17,867.27 to H.M. in restitution. Appellant's App. p. 14.

Thompson now appeals.

**Discussion and Decision**

Thompson raises two issues on appeal. First, she argues that the trial court erroneously sentenced her to a term of imprisonment that exceeded the maximum sentence allowable under the consecutive sentencing statute, Indiana Code section 35-50-1-2. Second, she argues that her sentence is inappropriate in light of the nature of the offenses and her character.

**I. Consecutive Sentencing**

Thompson argues that the trial court's imposition of a seven-year consecutive sentence was erroneous because she was not convicted of a "crime of violence," as defined in Indiana Code section 35-50-1-2, and therefore, her sentence exceeds the maximum sentence allowable under the consecutive-sentencing statute. Specifically, she argues that Class D felony causing serious bodily injury when operating a motor vehicle with a blood-alcohol concentration of at least 0.08 is not a "crime of violence" under Section 35-50-1-2(a).

7

Matters of statutory interpretation are reviewed *de novo* because they present pure questions of law. *Nicoson v. State*, 938 N.E.2d 660, 663 (Ind. 2010). "The primary purpose of statutory interpretation is to ascertain and give effect to the legislature's intent." *State v. Oddi-Smith*, 878 N.E.2d 1245, 1248 (Ind. 2008). When interpreting a statute, "we will not read into the statute that which is not the expressed intent of the legislature" and "it is just as important to recognize what the statute does not say as to recognize what it does say." *N.D.F. v. State*, 775 N.E.2d 1085, 1088 (Ind. 2002). Additionally, "[p]enal statutes should be construed strictly against the State and ambiguities should be resolved in favor of the accused." *Porter v. State*, 985 N.E.2d 348, 357 (Ind. Ct. App. 2013) (citing *Merritt v. State*, 829 N.E.2d 472, 475 (Ind. 2005)).

The statute restricting the length of consecutive sentences states in relevant part:

[T]he court shall determine whether terms of imprisonment shall be served concurrently or consecutively. The court may consider the:

(1) aggravating circumstances in IC 35-38-1-7.1(a); and

(2) mitigating circumstances in IC 35-38-1-1.7.1(b);

in making a determination under this subsection. The court may order terms of imprisonment to be served consecutively even if the sentences are not imposed at the same time. However, except for crimes of violence, the total of the consecutive terms of imprisonment, exclusive of terms of imprisonment under IC 35-50-2-8 and IC 35-50-2-10 to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the advisory sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

Ind. Code § 35-50-1-2(c). While the limitation does not prohibit consecutive sentences, it does limit the length of consecutive sentences. *Harris v. State*, 861 N.E.2d 1182, 1185 (Ind. 2007). The phrase "terms of imprisonment" includes "any period of incarceration a

8

defendant is sentenced to, even if all or a portion of that period of time is suspended." *Mask v. State*, 829 N.E.2d 932, 936 (Ind. 2005).

Here, Thompson's total consecutive sentence, including the portion suspended to probation, was seven years. Because Thompson was convicted only of Class D felonies, we must look to the advisory sentence for a Class C felony to determine the maximum consecutive sentence permitted under Section 35-50-1-2(c). The advisory sentence for a Class C felony is four years. Ind. Code § 35-50-2-6(a). Thus, Thompson argues, her aggregate sentence could not exceed four years.

However, Section 35-50-1-2(c) specifically states that the maximum-sentence restriction does not apply to "crimes of violence." Section 35-5-1-2(a) states:

> As used in this section, "crime of violence" means the following:
>
> (1) Murder (IC 35-42-1-1).
> (2) Attempted murder (IC 35-41-5-1).
> (3) Voluntary manslaughter (IC 35-42-1-3).
> (4) Involuntary manslaughter (IC 35-42-1-4).
> (5) Reckless homicide (IC 35-42-1-5).
> (6) Aggravated battery (IC 35-42-2-1.5).
> (7) Kidnapping (IC 35-42-3-2).
> (8) Rape (IC 35-42-4-1).
> (9) Criminal deviate conduct (IC 35-42-4-2) (before its repeal on July 1, 2014).
> (10) Child molesting (IC 35-42-4-3).
> (11) Sexual misconduct with a minor as a Class A felony under IC 35-42-4-9(a)(2) or a Class B felony under IC 35-42-4-9(b)(2).
> (12) Robbery as a Class A felony or a Class B felony (IC 35-42-5-1).
> (13) Burglary as a Class A felony or a Class B felony (IC 35-43-2-1).
> (14) Operating a vehicle while intoxicated causing death (IC 9-30-5-5).
> **(15) Operating a vehicle while intoxicated causing serious bodily injury to another person (IC 9-30-5-4).**
> (16) Resisting law enforcement as a felony (IC 35-44.1-3-1).

I.C. § 35-50-1-2(a) (emphasis added).

9

Thompson argues that a conviction for operating a motor vehicle with a blood-alcohol concentration of at least 0.08 causing serious bodily injury is different than a conviction for operating a motor vehicle while intoxicated causing serious bodily injury. *See, e.g.*, *Warner v. State*, 497 N.E.2d 259, 262 (Ind. Ct. App. 1986) ("If we were to adopt a construction of these statutes that would permit the State to establish guilt of driving while intoxicated merely by proving that the driver had a BAC of .10 percent or above, any substantive distinction between driving while intoxicated and the per se offense would cease to exist and the per se offense would be rendered meaningless. . . . Such a result would be inconsistent with our conclusion that the two crimes are not the same offense, in that they have been defined to have different elements."). She further argues that because her conviction is for a different offense than the one listed in Section 35-5-1-2(a), it is not included within the definition of a "crime of violence."

However, the State argues that Thompson disregards the statutory citation next to the text of the offense under subdivision fifteen. After the text, "Operating a vehicle while intoxicated causing serious bodily injury to another person," it is written "(IC 9-30-5-4)." The State argues that the statute cited in parenthesis after the text is controlling. Indiana Code section 9-30-5-4 states:

> (a) A person who causes serious bodily injury to another person when operating a vehicle:
>
>   (1) with an alcohol concentration equivalent to at least eight-hundredths (0.08) gram of alcohol per:
>       (A) one hundred (100) milliliters of the person's blood; or
>       (B) two hundred ten (210) liters of the person's breath;

10

(2) with a controlled substance listed in schedule I or II of IC 35-48-2 or its metabolite in the person's body; or

(3) while intoxicated;
commits a Class D felony. However, the offense is a Class C felony if the person has a previous conviction of operating while intoxicated within the five (5) years preceding the commission of the offense.

(b) A person who violates subsection (a) commits a separate offense for each person whose serious bodily injury is caused by the violation of subsection (a).

(c) It is a defense under subsection (a)(2) that the accused person consumed the controlled substance under a valid prescription or order of a practitioner (as defined in IC 35-48-1) who acted in the course of the practitioner's professional practice.

Thus, the State argues, Thompson's offenses are included within the definition of a "crime of violence" because the statutory citation includes the entire statute and Thompson was convicted under Section 9-30-5-4(a)(1) of the statute.

We agree with the State that Thompson's convictions for Class D felony operating a motor vehicle with a blood-alcohol concentration of at least 0.08 causing serious bodily injury are included within the definition of a "crime of violence." Under the definition of a "crime of violence," subpart fifteen includes the statutory citation without limiting it to causing serious bodily injury with a motor vehicle while intoxicated under Section 9-30-5-4(a)(3). We think the citation to the statute is evidence that the legislature intended to include both crimes within the definition of a "crime of violence."

Had the legislature intended only to define operating a motor vehicle while intoxicated causing serious bodily injury as a crime of violence, it could have done so with a more specific code citation—Section 9-30-5-4(a)(3). We are convinced by the State's

11

argument that the legislature did choose to designate a specific code section in other contexts. *See N.D.F.*, 775 N.E.2d at 1088 ("[I]t is just as important to recognize what the statute does not say as it is to recognize what it does say."). For example, subpart eleven under Section 35-5-1-2(a), which pertains to sexual misconduct with a minor, limits a "crime of violence" specifically to Indiana Code section 35-42-4-9(a)(2) and Indiana Code section 35-42-4-9(b)(2). These two sections apply when a person at least eighteen years old performs or submits to sexual intercourse or deviate sexual conduct with a minor when it is committed by using or threatening the use of deadly force; it is committed while armed with a deadly weapon; it results in serious bodily injury; or the offense is committed by giving the victim a drug without the minor's knowledge or knowing that the victim was given a drug without the minor's knowledge. I.C. § 35-42-4-9. The distinction between these subsections and the other portions of the statute is the violent aspect of the crime under these portions of the statute.

Thompson responds to these arguments in her reply brief by arguing that there are instances where the text limits the applicability in Section 35-5-1-2(a) even though the statute in parenthesis afterward cites the entire offense. I.C. § 35-5-1-2(a)(12) (defining only "Robbery as a Class A or Class B felony" as a crime of violence); I.C. § 35-5-1-2(a)(16) (defining only "Resisting law enforcement as a felony" as a crime of violence). However, these restrictions are not the same because they differentiate between different levels of crimes, such as the difference between a felony and a misdemeanor or the difference between a Class C felony and a Class B or A felony. In each example cited by Thompson, the distinctions serve to define as a "crime of violence" conduct that causes

bodily injury to another person and exclude conduct that does not cause bodily injury to another. *See* I.C. § 35-42-5-1, I.C. § 35-43-2-1, I.C. § 35-44.1-3-1.

No such similar distinction can be drawn between operating a motor vehicle while intoxicated causing serious bodily injury and operating a motor vehicle with a blood-alcohol concentration of at least 0.08 causing serious bodily injury. In both instances, the crime is a Class D felony where the defendant causes serious bodily injury. The act of causing serious bodily injury is an essential element to each crime listed in Section 9-30-5-4. Because each of these offenses results in serious bodily injury to a victim, it would be illogical for the legislature to include one but not the other within the definition of a "crime of violence." Moreover, if we were to agree with Thompson's argument, a conviction of a person who causes serious bodily injury to another person while under the influence of a Schedule I or II controlled substance would also not be a "crime of violence," as it is not included in the words before the statutory citation under Section 35-5-1-2(a). For this reason, we conclude that operating a motor vehicle with a blood-alcohol concentration of at least 0.08 causing serious bodily injury is a "crime of violence" under Indiana Code section 35-5-1-2(a)(15). Therefore, the consecutive-sentencing limitation under Section 35-5-1-2 does not apply to Thompson.

## II. Inappropriate Sentence

Thompson also argues that her seven-year sentence with two years suspended to probation is inappropriate in light of the nature of the offenses and her character. The State responds that Thompson has waived this argument because she failed to make an argument that the nature of her offenses warrants a downward revision in her sentence. *See Perry v.*

13

*State*, 921 N.E.2d 525, 527 (Ind. Ct. App. 2010) ("It is well-established that a failure to make a cogent argument regarding the nature of the defendant's offense and the defendant's character results in waiver of the defendant's appropriateness claim."). In her reply brief, Thompson contends that she did discuss the nature of the offenses by analogizing her case to *Davis v. State*, 851 N.E.2d 1264 (Ind. Ct. App. 2006), *trans. denied*, and by describing in detail the evidence presented at sentencing. We agree with Thompson that her argument by analogy to *Davis* was sufficient to contend that her sentence was inappropriate and proceed to the merits.

Although a trial court may have acted within its lawful discretion in imposing a sentence, Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of sentences through Indiana Appellate Rule 7(B), which provides that a court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Reid v. State*, 876 N.E.2d 1114, 1116 (Ind. 2007) (citing *Anglemyer*, 868 N.E.2d at 491). When determining whether a sentence is inappropriate, we recognize that the presumptive sentence "is the starting point the Legislature has selected as an appropriate sentence for the crime committed." *Weiss v. State*, 848 N.E.2d 1070, 1072 (Ind. 2006). When assessing the nature of the offense and the character of the offender, we may look to any factors appearing in the record. *Stetler v. State*, 972 N.E.2d 404, 408 (Ind. Ct. App. 2012), *trans. denied*. The defendant has the burden of persuading us that her sentence is inappropriate. *Reid*, 876 N.E.2d at 1116 (citing *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)).

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.* Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case. *Id.* at 1224. In assessing whether a sentence is inappropriate, appellate courts may take into account whether a portion of the sentence is ordered suspended or is otherwise crafted using any of the variety of sentencing tools available to the trial judge. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010). These tools include probation, home detention, placement in a community-corrections program, executed time in a Department of Correction facility, concurrent rather than consecutive sentences, and restitution/fines. *Id.*

A person who commits a Class D felony shall be imprisoned for a term of between six months and three years, with one-and-a-half years being the advisory term. Ind. Code § 35-50-2-7(a). Here, Thompson pled guilty to four counts of Class D felony operating a motor vehicle with a blood-alcohol concentration of at least 0.08 causing serious bodily injury. The trial court sentenced Thompson to three years on Count 1, three years on Count 2, 180 days on Count 3, and 180 days on Count 4. All four sentences are within the statutory range.

15

The substantial harm caused by Thompson's actions merit the sentence. After Thompson decided to consume a substantial amount of alcohol while driving, she hit the back of Redman's car, causing Redman's car to hit another car. Thompson had a blood-alcohol concentration of 0.25, three times the legal limit. Tr. p. 64. Moreover, she knew the dangers associated with mixing alcohol and benzodiazepines. *Id.* at 65-66. Wilson, who observed the incident, estimated that she was driving eighty-five miles per hour as she passed him. The State Police reconstruction report determined that Thompson was traveling "at least 34 miles per hour" when she hit Redman's car. *Id.* at 48. Immediately afterward, Wilson saw "[a] little girl screaming and crying and her mom's blood all over her. And then her mom's blood is all over the floor." *Id.* at 12. Meanwhile, he saw Thompson talking on her cellular phone and "giggling." *Id.* at 13.

Her choice to drink and drive drastically changed the lives of the people affected by this case. Redman, after being airlifted to the hospital, was in a coma for fourteen days with traumatic head and brain injuries. *Id.* at 35. She had to relearn basic life skills such as eating, brushing her teeth, standing, walking, or even knowing that she had a daughter. *Id.* at 36. Redman still lives with the horror inflicted upon her by Thompson's carelessness. She fights severe headaches every day and cannot even lay on her side without getting dizzy and nauseous. *Id.* She also lost part of her vision in both eyes. *Id.* Redman, due to her injuries, also "missed out on helping [her] daughter . . . through a difficult time in her life, physically and emotionally recovering from this traumatic accident." *Id.* at 27.

H.M. was also significantly affected. For weeks following the accident, it was almost impossible for her to walk. *Id.* at 20. Her ring finger, which was completely broken,

16

has been operated on twice. *Id.* H.M. was an accomplished pianist and guitarist before the accident, but due to the injury to her finger, it is very difficult for her to play music. *Id.* at 46. She missed substantial time from school and, "[r]ather than going to sporting events and hanging out with friends, the regular activities of people [her] age, [she] spent [her] time worrying about [her] mother, catching up at school and trying to get better." *Id.*

Thompson's decision to drive while intoxicated has also affected other members of Redman's family. Before the accident, both Redman and her husband, Steve Redman, enjoyed perfect credit ratings. *Id.* at 46. Since the accident, Steve has had to care for both Redman and H.M. In 2012, he drove 11,682 miles just for medical treatment. *Id.* at 38. Steve also took a second job to help pay for the substantial medical expenses and to compensate for the loss of Redman's income. *Id.* at 46.

The people in the Jeep Cherokee were also injured. Fiandt "experienced acute pain for some time after" and Parsons wrote that she has shoulder issues because of the crash. Ex. 2, 3. The nature of the offenses was significant and profound.

Regarding Thompson's character, we acknowledge that she entered into a plea agreement with the State, had a troubled childhood, and has psychological issues. Additionally, since her release from jail she has been wearing an alcohol-monitoring bracelet and has abstained from alcohol.

However, we are concerned that Thompson was unable to admit the extent of her problems with alcohol. When her attorney asked her, "when you would drink you would drink in excess?" she responded with "I used to. I mean not to excess. I just—drank too much." Tr. p. 56. Similarly, she was hesitant to admit that she was an alcoholic. She

17

stated that she did not "deal with alcohol well" and that she was "not drinking anymore," before eventually admitting that she was an alcoholic at one time. *Id.* at 60. This surprised her psychologist, Dr. Murphy, who stated that alcoholism was "one of the main things that we have been addressing . . . ." *Id.* at 78.

While Thompson has led a mostly law abiding life, we note that she has a prior conviction for driving while intoxicated. Appellant's Confidential Supplemental App. p. 4. Moreover, at the sentencing hearing, Thompson testified that she had been involved in at least three car accidents in addition to this one, but she did not remember the exact number that were her fault. *Id.* at 67. She was even airlifted to the hospital after one, but she does not remember if she consumed alcohol before that accident. *Id.* at 68. As the trial court stated, "[s]he's had -- in fact, her problems with alcohol and drugs have been so bad she's had near death experiences and has still not addressed the problem before this accident occurred." *Id.* at 99.

Finally, Thompson argues that her sentence merits a reduction because her circumstances are similar to those in *Davis* where this Court determined that Davis's sentence was inappropriate in light of the nature of the offenses and her character. 851 N.E.2d at 1268. However, we find *Davis* distinguishable. In *Davis*, this Court noted that the trial court enhanced Davis's sentence to a Class C felony because she had a previous conviction for operating a motor vehicle while intoxicated and then used the same conviction as an aggravator to increase Davis's sentence. *Id.* at 1267. Additionally, despite evidence that Davis had taken efforts to improve herself by attending Alcoholics Anonymous and a job-skills training program, the trial court found no mitigators. *Id.* at

18

1268 n.5. Here, the trial court did not use Thompson's past conviction to enhance her sentence to a Class C felony, so it could be properly used as an aggravator.[2] Moreover, unlike the trial court in *Davis*, the trial court in this case did find that there were mitigators—specifically, that Thompson had shown that she would respond well to short-term imprisonment or probation and Thompson had only one previous conviction. After considering these mitigators, the trial court determined that the aggravators outweighed the mitigators.

Given the nature of these offenses and Thompson's character, Thompson has failed to persuade us that her aggregate seven-year sentence, with two years suspended to probation, is inappropriate. We therefore affirm the trial court.

Affirmed.

RILEY, J., and MAY, J., concur.

---

[2] Thompson's previous conviction for operating while intoxicated was on May 21, 2007, just five years and ten months before the date she pled guilty to these offenses. Section 9-30-5-4(a) elevates Class D felony operating a motor vehicle with a blood-alcohol concentration of at least 0.08 causing serious bodily injury to a Class C felony if the person has a previous conviction for operating while intoxicated within the five years preceding the commission of the offense.