## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 15 2015, 9:01 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Marce Gonzalez, Jr.
Dyer, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Wyatt Clayton Squyres,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 15, 2015

Court of Appeals Case No.
45A05-1502-CR-56

Appeal from the Lake Superior
Court.
The Honorable Salvador Vasquez,
Judge.
Cause No. 45G01-1312-FB-118

**Darden, Senior Judge**

## Statement of the Case

[1]     Wyatt Clayton Squyres appeals the sentence the trial court imposed after he pleaded guilty to one count of sexual misconduct with a minor, a Class C felony.  Ind. Code § 35-42-4-9 (2007).  We affirm.

# Issue

[2] Squyres raises one issue, which we restate as: whether Squyres' sentence is inappropriate in light of the nature of the offense and the character of the offender.

# Facts and Procedural History

[3] On the evening of November 23, 2013, fifteen-year-old J.H. and other family members attended a party in Lowell, Indiana. Squyres, who was twenty-three years old, was also present. He knew J.H. and her siblings because he was a friend of J.H.'s older brother. Squyres was aware that J.H. was only fifteen years old. At the time, Squyres was facing a pending felony charge of theft, having been released on bail just five days earlier.

[4] As the party progressed, Squyres went inside a camper parked on the property where the party was taking place and laid down on the bed. Later, around one or two a.m., J.H., along with others, went to the camper. Squyres was lying in the bed where J.H. was supposed to sleep. She asked him to leave, but he refused, saying he had nowhere to sleep. J.H. lay down next to him and went to sleep.

[5] J.H., who had never had sexual intercourse before, awoke to discover that her pants had been pulled down and one of her legs was wrapped around Squyres' legs. Squyres' penis was inside her vagina. J.H. had not consented to the sexual intercourse, and Squyres stopped after she woke up. J.H. immediately left the camper and got a ride home.

[6]    J.H. became extremely depressed after the incident and had to seek counseling and therapy. She was still attending weekly therapy sessions at the time of the sentencing hearing, over a year later. Subsequently, J.H. became "terrified of boys" due to the sexual assault and stayed at home whenever possible. Tr. p. 19. She was embarrassed and dropped out of school, and her mother had to homeschool her. Prior to the sexual assault, J.H. had had her mind set on going to college, but, according to her mother, decided that she did not want to go because "she's terrified of what's out there." *Id.* She mostly stopped socializing with her friends and turned down baby-sitting jobs if there was a man in the house. At home, J.H. stayed in her room all the time and did not sleep at night because she was afraid of the dark. Her mother had to stop hugging her because J.H. could not "stand to be touched." *Id.* According to J.H.'s mother, J.H. will continue with her therapy for the foreseeable future, perhaps "for the rest of her life." *Id.*

[7]    The State had originally charged Squyres with rape, a Class B felony, and three counts of sexual misconduct with a minor, one as a Class B felony and two as Class C felonies. The parties later reached a plea agreement; wherein, Squyres agreed to plead guilty to one count of sexual misconduct with a minor as a Class C felony, and the State agreed to dismiss the companion charges, in addition to a pending Class D felony theft unrelated charge. Sentencing was left to the discretion of the trial court. The trial court accepted Squyres' guilty plea and, after presentation of evidence and argument by counsel, sentenced him to six and one-half years. Squyres filed a motion to correct error,

requesting an alternative sentence not to exceed four years and/or probation. The trial court denied the motion, and this appeal followed.

## Discussion and Decision

[8] Although a trial court may have acted within its lawful discretion in imposing a sentence, Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of sentences through Indiana Appellate Rule 7(B). *Thompson v. State*, 5 N.E.3d 383, 391 (Ind. Ct. App. 2014). Rule 7(B) allows an appellate court to revise a sentence that is otherwise authorized by statute if, "after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."

[9] The principal role of appellate review under Rule 7(B) is to attempt to leaven the outliers, not to achieve a perceived "correct" result in each case. *Garner v. State*, 7 N.E.3d 1012, 1015 (Ind. Ct. App. 2014). When assessing the nature of the offense and the character of the offender, we may look to any factors appearing in the record. *Thompson*, 5 N.E.3d at 391. It is the defendant's burden to persuade us that the sentence imposed by the trial court is inappropriate. *Id.*

[10] At the time Squyres committed this offense, the advisory sentence for a Class C felony was four years, the minimum sentence was two years, and the maximum sentence was eight years. *See* Ind. Code § 35-50-2-6 (2005). The trial court

imposed an enhanced sentence of six and one-half years. Squyres asks the Court to reduce his sentence to the advisory sentence of four years.

[11] Regarding the nature of the offense, Squyres forced himself upon a sleeping girl at a party. Squyres was a friend of J.H.'s family and was aware that she was only fifteen years old at the time. J.H. had not ever had sexual intercourse before the sexual assault. The sexual assault had a severe impact upon J.H., to the extent that she became so embarrassed that she dropped out of school and had to be homeschooled. She had to seek counseling and therapy. At the time of sentencing, J.H. continued to attend therapy weekly and had abandoned her dreams of attending college. She has become so terrified of males that she rarely leaves her house and will not accept a baby-sitting job if she knows a man will be present. The harm done to the victim was significant and much greater than the elements necessary to prove the commission of the offense. *See* Ind. Code § 35-38-1-7.1(a)(1) (2012).

[12] Now, we turn to the character of the offender. Although Squyres has no prior criminal convictions, we cannot overlook the fact that he was out on bond for a prior unrelated felony offense when he committed the crime at issue here. He pleaded guilty, thereby conserving judicial resources and relieving the victim from having to testify. However, Squyres also received a substantial benefit from the plea, specifically, dismissal of a Class B felony rape charge that carried a much longer prison sentence, as well as the earlier unrelated felony offense. Furthermore, the unrelated felony charge could have warranted a sentence to be served consecutively to the sentence for the instant offense. *See Westlake v. State*,

987 N.E.2d 170, 175 (Ind. Ct. App. 2013) (a guilty plea does not rise to the level of significant mitigation where the defendant substantially benefits from the plea agreement). Squyres asserts that he suffers from depression, but he does not argue that his depression influenced his decision to commit the crime at issue.

[13] Considering the nature of the offense, particularly the severe degree of harm to the victim, and the fact that Squyres was out on bond when he committed the current crime, he has failed to convince us that his enhanced sentence is inappropriate.

## Conclusion

[14] For the foregoing reasons, we affirm the judgment of the trial court.

[15] Affirmed.

Riley, J., and Robb, J., concur.