## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 26 2019, 8:47 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kristin A. Mulholland
Appellate Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Taylor C. Byrley
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Antonio Devaughn Williams, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | April 26, 2019 <br><br> Court of Appeals Case No. <br> 18A-CR-2826 <br><br> Appeal from the <br> Lake Superior Court <br><br> The Honorable <br> Diane Ross Boswsell, Judge <br><br> Trial Court Cause No. <br> 45G03-1710-F3-39 |

**Vaidik, Chief Judge.**

# Case Summary

[1] Antonio Devaughn Williams appeals his twelve-year sentence for Level 3 felony rape. He contends that his sentence is inappropriate in light of the nature of the offense and his character. We affirm.

# Facts and Procedural History

[2] Williams stipulated to the following facts. On the evening of July 8, 2017, Williams went looking for K.W., whom he had recently broken up with. That night, K.W. was visiting P.H., a mutual friend of both her and Williams, at his apartment in Gary. At some point, Williams arrived at the apartment complex to look for K.W. K.W. began receiving text messages from Williams asking where she was, what she was doing, and telling her that she "better not be screwing around with [P.H.]." Tr. p. 31. Then Williams approached the front door of P.H.'s apartment and began to knock aggressively, calling for K.W. to come out. At one point, Williams threatened to vandalize K.W.'s car if she did not come outside. Williams also put his ear up to the door to try and hear K.W. and P.H. in the apartment. He paced up and down the hallway outside P.H.'s apartment, got on and off the elevator, and then went back to knocking on the door. Williams did this for more than an hour.

[3] Eventually, Williams yelled that he was leaving, so K.W. thought that it was safe for her to leave P.H.'s apartment. K.W. exited P.H.'s apartment and made her way toward the elevator. When the elevator doors opened, Williams jumped out, knocked K.W. to the ground, and dragged her into the elevator. At that point, K.W. realized that Williams had a gun. Once inside the elevator,

Williams began hitting and stomping on K.W., ultimately causing her to have a black eye. As the elevator reached the ground floor, Williams took K.W.'s cell phone and broke it before running out of the apartment building.

[4] K.W. got up from the elevator floor and began making her way to her car, which was parked in a nearby parking lot. As K.W. was getting in her car, Williams ran up behind her, took her car keys, and started hitting her again. Williams threatened K.W. and then forced her to drive to his apartment. Once K.W. was inside Williams's apartment, he made her "remove her clothing so he could inspect whether or not she had sex that night." Appellant's App. Vol. II p. 47. Dissatisfied, Williams then "held K.W. down by the arms, smelled her, and had sexual intercourse with her, while K.W. cried and told him to stop." *Id*. K.W. was unable to leave Williams's apartment until the next morning. As K.W. was leaving, she began arguing with him. During the argument, K.W. grabbed a small knife from her car and punctured one of Williams's car tires. Williams then ran toward K.W., kicked her, caused her to fall backward and break her wrist. They struggled for the knife, and once Williams was able to gain control over it, he punctured two of K.W.'s car tires and stabbed her in the calf.

[5] In October, the State charged Williams with twelve counts: one count of Level 3 felony criminal confinement; one count of Level 3 felony rape; two counts of Level 5 felony criminal confinement; one count of Level 5 felony domestic battery resulting in serious bodily injury; one count of Level 5 felony domestic battery by means of a deadly weapon; one count of Level 6 felony criminal

confinement; one count of Level 6 felony pointing a firearm; one count of Level 6 felony sexual battery; one count of Level 6 felony domestic battery resulting in moderate bodily injury; one count of Class A misdemeanor domestic battery; and one count of Class A misdemeanor interference with the reporting of a crime. In August 2018, Williams and the State entered into a plea agreement. According to the agreement, Williams would plead guilty to one count of Level 3 felony rape and the State would dismiss the remaining charges. Sentencing was left to the discretion of the trial court with a cap of fourteen years, two years less than the maximum sentence of sixteen years. *Id*. at 43; *see also* Ind. Code § 35-50-2-5(b) ("A person who commits a Level 3 felony shall be imprisoned for a fixed term of between three (3) and sixteen (16) years, with the advisory sentence being nine (9) years.").

[6] At the October 31 sentencing hearing, the trial court identified mitigating and aggravating circumstances. As for mitigators, the court found that Williams had no prior criminal history. The court found the following aggravators: that Williams was lying in wait for K.W.; that Williams used a deadly weapon during the commission of the crime; and that the nature of the offense was humiliating, for example, when Williams smelled K.W. to see if she had sex with P.H. before raping her. The court then concluded:

> [T]his attack was brutal. . . . Something else was going on that day. I can't imagine a man who never had this kind of history all of a sudden jumping off to this degree. I understand people get jealous and they do crazy things when they get jealous, but this was beyond that. This was beyond that.

Tr. pp. 37-38. The court sentenced Williams to twelve years in the Indiana Department of Correction.

[7] Williams now appeals.

# Discussion and Decision

[8] Williams contends that his twelve-year sentence is inappropriate. He asks us to reduce it pursuant to Indiana Appellate Rule 7(B), which provides that an appellate court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Because we generally defer to the judgment of trial courts in sentencing matters, *Norris v. State*, 27 N.E.3d 333, 335-36 (Ind. Ct. App. 2015), defendants have the burden of persuading us that their sentences are inappropriate, *Thompson v. State*, 5 N.E.3d 383, 391 (Ind. Ct. App. 2014). "Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other facts that come to light in a given case." *Id*. (citing *Cardwell v. State*, 895 N.E.2d 219, 1224 (Ind. 2008)).

[9] Regarding the nature of the offense, we begin by noting that Williams's rape of K.W. was accompanied by other violent acts and that as a result he was charged with and could have easily been convicted of multiple additional felonies and gotten a much longer sentence. Indeed, Williams concedes that

"the facts of this offense are troubling." Appellant's Br. p. 10. The trial court described the offense as "brutal" and "humiliating." Tr. pp. 37-38. First, Williams waited outside P.H.'s apartment for over an hour. Then when K.W. exited the apartment Williams jumped out of the elevator, knocked her to the ground, and dragged her into the elevator. As soon as he pulled her inside the elevator, Williams began hitting and stomping on K.W. Next, although he briefly ran off after the elevator attack, Williams returned in time to intercept K.W. in the parking lot. He took her car keys, threatened her, and forced her to drive to his apartment. Once he had K.W. inside his apartment, Williams made her remove her clothes, held her down, and smelled her to inspect whether she had had sex that night. He had sexual intercourse with K.W. while she cried and told him to stop. Finally, when K.W. left his apartment the next morning, an argument ensued that ended with Williams stabbing K.W. in the calf. The nature of the offense supports Williams's twelve-year sentence.

[10]     As for Williams's character, he argues that "his action[s] that night w[ere] an aberration." Appellant's Br. p. 10. His PSI reveals that he has a supportive family and friends and no criminal record. It is also true that at the time of the offense Williams was in his last year of college and working two jobs and that at sentencing he expressed remorse. But even if these things favor Williams's assertion that this was out of character, they do not overcome the brutal and humiliating nature of this offense. As the trial court stated, "people get jealous and they do crazy things when they get jealous, but this was beyond that." Tr.

38. Williams has failed to persuade us that his twelve-year sentence is inappropriate.

[11] Affirmed.

Kirsch, J., and Altice, J., concur.