## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 09 2019, 9:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tiffany Lynn Daugherty, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | May 9, 2019 <br><br> Court of Appeals Case No. <br> 18A-CR-2536 <br><br> Appeal from the <br> Vigo Superior Court <br><br> The Honorable <br> John T. Roach, Judge <br><br> Trial Court Cause No. <br> 84D01-1703-F1-715 |

**Vaidik, Chief Judge.**

## Case Summary

[1] Tiffany Lynn Daugherty pled guilty to several offenses surrounding the death of her five-year-old disabled daughter, and the trial court sentenced her to twenty-one years—fifteen years in the Department of Correction and six years suspended to probation. Daugherty now appeals, arguing that her sentence is inappropriate. We affirm.

## Facts and Procedural History

[2] Daugherty and her boyfriend, Brian Moseman,[1] lived together in Terre Haute along with their four children, including Adilynn, who was born in July 2010. Daugherty was the primary caretaker of Adilynn, who had "extreme special needs." Tr. p. 102. Adilynn had microcephaly, mitochondrial disorder, and seizures. In addition, she was hearing impaired, vision impaired, and unable to talk; and she needed a feeding tube to eat, a tracheostomy to breathe, and a wheelchair to get around.

[3] In April 2011, Adilynn, who weighed 8 pounds, was admitted to Riley Hospital for Children for failure to thrive and malnutrition. While Adilynn was hospitalized, she gained weight. Doctors warned Daugherty that malnutrition could result in increased infections, developmental delays, and Adilynn's death. DCS was contacted, and the parents and DCS entered into an informal

---

[1] Moseman pled guilty to two counts of Level 6 felony neglect of a dependent and was sentenced to concurrent terms of two-and-a-half years, all suspended to probation. *See* 84D01-1703-F1-716.

adjustment, which ended in late 2011.  In July 2012, Adilynn was seen at Riley Hospital and weighed 21.12 pounds.

Adilynn, however, received very little medical care after this point.  Although Daugherty said Adilynn had a pediatrician in Terre Haute, she saw this pediatrician only once, in November 2013.  Adilynn weighed 16 pounds at this appointment.  Adilynn's next doctor appointment was over two years later, in December 2015, with a different pediatrician.  Adilynn weighed 17.12 pounds at this appointment.  Although Adilynn was supposed to have regular follow-up care at Riley Hospital, including further genetic testing, she was never seen there again.  This is so even though Daugherty took her other three children to the doctor regularly.

On December 23, 2015, Daugherty called Adilynn's nutritionist at IU Health to discuss Adilynn's caloric intake.  This was the nutritionist's first contact with Daugherty since 2012.  Daugherty told the nutritionist that Adilynn, who was then five years old, weighed 26 pounds (even though she weighed 17.12 pounds earlier that same month).  On January 6, 2016, the nutritionist called Daugherty to follow up on Adilynn, and Daugherty said she had gained 1.5 pounds that week.  Daugherty said she was concerned that Adilynn was gaining too much weight, which would interfere with the trach.  The nutritionist told Daugherty to follow up with Adilynn's pediatrician to get a different trach size.

Approximately two weeks later, on January 21, 2016, Daugherty dropped off Adilynn at Moseman's mother's house.  Shortly thereafter, the grandmother

noticed that something was wrong with Adilynn and called Daugherty. Adilynn was taken to the hospital, where she was pronounced dead. Adilynn weighed 16.94 pounds at the time of her death. DCS had Daugherty take a drug screen that day, and she tested positive for marijuana. DCS also went to Daugherty and Moseman's house, where it found 115 unopened bottles of Adilynn's formula.

[7] An autopsy was conducted the following day. According to the forensic pathologist, the cause of Adilynn's death was "patchy bronchopneumonia" and malnutrition. Ex. 5. The pathologist's report showed the following signs of medical neglect: (1) Adilynn failed to gain weight while in the care of her parents, despite a consistent pattern of gaining weight while in the care of hospital personnel; (2) the parents failed to seek ongoing medical care for Adilynn at Riley Hospital for several years even though she had major medical issues; and (3) Adilynn had severe malnutrition at the time of her death, despite the fact that she was provided special feeding materials by social services.

[8] The State charged Daugherty with eight counts: Count I: Level 1 felony neglect of a dependent resulting in death (failed to provide adequate nutrition and/or medical care to Adilynn); Count II: Level 3 felony neglect of a dependent resulting in serious bodily injury (failed to provide adequate nutrition and/or medical care to Adilynn); Count III: Level 5 felony neglect of a dependent resulting in bodily injury (failed to provide adequate nutrition and/or medical care to Adilynn); Count IV: Level 6 felony neglect of a dependent (failed to provide adequate nutrition and/or medical care to Adilynn); Count V: Level 6

felony neglect of a dependent (placed Adilynn in a situation that endangered her life or health by having "THC in her system"); Count VI: Level 6 felony welfare fraud (misused SSI benefits for Adilynn); Count VII: Level 6 felony theft (exerted unauthorized control over money from Vigo County Welfare Department); and Count VIII: Level 5 felony reckless homicide. Appellant's App. Vol. II pp. 127-28. Daugherty was released on bond pending trial; however, she later violated the conditions of her pretrial release for failing to report and was sent back to jail.

[9] The State and Daugherty later entered into a plea agreement. According to the agreement, Daugherty would plead guilty to Counts II, V, VII, and VIII, the State would dismiss the remaining charges, and "[f]or purposes of sentencing, Count VIII will merge with Count II" and "Counts II, V and VII shall run consecutive to each other." *Id.* at 124. The agreement also provided:

> The State will recommend that defendant be sentenced to a set sentence of twenty-one (21) years. A minimum of ten (10) years shall be executed with the parties each permitted to argue to the court placement on this portion of the sentence. The parties shall argue the sentence imposed on the remaining eleven (11) years, with each side permitted to argue from suspended time with or without probation to a fully executed sentence.

*Id.*

[10] At the sentencing hearing, the trial court identified the following aggravators: (1) Adilynn was less than twelve years old; (2) Daugherty violated the conditions of her pretrial release; (3) Adilynn was mentally and physically

infirm; (4) Daugherty had care, custody, and control of Adilynn; and (5) the nature and circumstances of the crime, specifically the prolonged period during which the acts occurred. The court identified the following mitigators: (1) Daugherty had no criminal history at the time of these offenses; (2) she suffered from post-traumatic stress disorder (according to Daugherty, she witnessed her mother attempt suicide and was a crime victim herself as a child); and (3) she accepted responsibility and expressed remorse. Pursuant to the plea agreement, the trial court sentenced Daugherty to twenty-one years. The court then ordered Daugherty to serve fifteen years in the DOC (the plea agreement required a minimum of ten years) and six years on probation. The court explained its sentence as follows:

> You starved your child to death. . . . You made the statement that [you] didn't realize until [you] gather[ed] picture[s] for the funeral about what was going on. You know why that's not true? Because after three (3) years of not taking her to the doctor, in your own words, you knew something was wrong in December, and what we had in December was the picture I'm not going to show you again, you've seen it, it's the picture in the autopsy, when that child had gotten down to sixteen (16) pounds. That doesn't gradually happen. It happened because of your actions. And to do anything less than the sentence in this case would essentially make [Adilynn] a thro[w]-away and I'm not going to do that.

Tr. p. 130. The court added that "[u]pon completion of ten (10) years of the executed portion of the sentence, [Daugherty] is permitted to petition the court for modification of her placement for the balance of her executed sentence." Appellant's App. Vol. II pp. 184-85.

[11]    Daugherty now appeals her sentence.

# Discussion and Decision

[12]    Daugherty contends that having to serve fifteen years of her twenty-one-year sentence in the DOC is inappropriate in light of the nature of the offenses and her character. She asks us to reduce the fifteen-year executed portion of her sentence pursuant to Indiana Appellate Rule 7(B), which provides that an appellate court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Because we generally defer to the judgment of trial courts in sentencing matters, *Norris v. State*, 27 N.E.3d 333, 335-36 (Ind. Ct. App. 2015), defendants have the burden of persuading us that their sentences are inappropriate, *Thompson v. State*, 5 N.E.3d 383, 391 (Ind. Ct. App. 2014). "Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *Id.* (citing *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008)).

[13]    Daugherty acknowledges that the crimes are "serious." Appellant's Br. p. 8. As the trial court found, Daugherty, Adilynn's mother and primary caretaker, did not provide Adilynn—a child with "extreme special needs"—with medical care for three years and "starved [her] to death." Tr. p. 130.

[14] As for Daugherty's character, it is true that she had no criminal history until this case. Although the trial court found that Daugherty accepted responsibility and expressed remorse, it also found that Daugherty did not take any steps to improve herself and in fact "went the complete opposite way" by violating the terms of her pretrial release. *See id.* at 131-32. Finally, Daugherty points out that this crime is unlikely to reoccur, as Adilynn had "serious physical needs that warranted an extraordinary level of care" and her "other children do not suffer from these same disabilities." Appellant's Br. p. 9. Even considering these things in Daugherty's favor, they do not overcome the disturbing nature of these offenses. Daugherty has failed to persuade us that the fifteen-year executed portion of her sentence, which she can ask the court to modify after completing ten years (the minimum under the plea agreement), is inappropriate.

[15] Affirmed.

Kirsch, J., and Altice, J., concur.