## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 18 2020, 9:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kristin A. Mulholland
Appellate Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Ellen H. Meilaender
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Timothy Franklin Jackson, *Appellant-Defendant,* | August 18, 2020 |
| v. | Court of Appeals Case No. 20A-CR-762 |
| | Appeal from the Lake Superior Court |
| State of Indiana, *Appellee-Plaintiff* | The Honorable Diane Ross Boswell, Judge |
| | Trial Court Cause Nos. 45G03-1802-F3-8 45G03-1606-F2-16 |

**Vaidik, Judge.**

# Case Summary

[1] Timothy Franklin Jackson contends that his thirteen-year sentence for Level 3 felony armed robbery and Level 5 felony burglary is inappropriate. We disagree and affirm.

# Facts and Procedural History

[2] Around 11:30 p.m. on April 11, 2016, seventeen-year-old Jackson broke into the Gary home of an elderly couple fostering his child,[1] pointed a gun at them, and demanded to know where the child was. The woman directed Jackson to the child, and Jackson left the house with the child. The next day, police officers found the child unharmed.

[3] In June 2016, the State charged Jackson with Level 2 felony burglary, Level 3 felony kidnapping, and Level 6 felony kidnapping in Cause No. 45G03-1606-F2-16 ("F2-16").[2] When police went to arrest Jackson on the warrant in F2-16, Jackson fled and was charged with resisting law enforcement in another cause number. *See* Cause No. 45G03-1705-CM-14. Jackson was initially released on electronic monitoring in F2-16 but removed his GPS bracelet in August 2016. Jackson was taken back into custody but later released on bond on February 6, 2018. *See* Appellant's App. Vol. II pp. 7, 54.

---

[1] The child was approximately fifteen months old at the time.

[2] This case was a direct file in Lake Superior Court. *See* Tr. p. 29.

[4]     About two weeks later, on February 22, 2018, Jackson, who by then was eighteen years old, approached a man getting into his car in East Chicago and told him to give him everything he had. When the man tried to push Jackson away, Jackson pulled out a handgun and ordered the man to slide into the passenger seat. Jackson then drove around with the man for several minutes, stopped the car in an alley, and ordered the man to take off his shoes and shirt and get out of the car.

[5]     Later that month, the State charged Jackson with Level 3 felony armed robbery, Level 3 felony kidnapping, Level 6 felony auto theft, and Level 6 felony theft in Cause No. 45G03-1802-F3-8 ("F3-8"). A warrant was issued for Jackson's arrest; however, he wasn't arrested on the warrant until a year later, in February 2019.

[6]     Meanwhile, in April 2018, Jackson was arrested in Tippecanoe County for several offenses. *See* Cause No. 79D02-1804-F2-9. A jury convicted Jackson of Level 5 felony robbery, and the trial court sentenced him to five years.

[7]     In January 2020, Jackson and the State entered into a plea agreement under which Jackson agreed to plead guilty to an amended charge of Level 5 felony burglary in F2-16 and Level 3 felony armed robbery in F3-8 and the State agreed to dismiss the remaining charges in F2-16 and F3-8 and the resisting-law-enforcement charge. Sentencing was left open to the trial court.

[8]     At the guilty-plea hearing, the parties submitted stipulations of the facts above. At the sentencing hearing, Jackson, who by then was twenty years old, testified

that he was "sorry" for "taking [the victims] through. . . what they had to go through." Tr. p. 36. The woman who fostered Jackson's child testified about the "fear" and "trauma" she and her husband experienced and compared the incident to a television show. *Id.* at 27. The State noted that Jackson had been arrested thirteen times, nine times as a juvenile. In addition, Jackson had at least two juvenile adjudications and the 2018 felony robbery conviction in Tippecanoe County. Defense counsel, who conceded that Jackson did not have a good record considering his young age, asked the trial court to impose the advisory sentence of three years for the Level 5 felony and the advisory sentence of nine years for the Level 3 felony. *Id.* at 35. Defense counsel did not address whether the sentences should be served concurrently or consecutively. Defense counsel also asked the court to consider a "split sentence," meaning that after serving a period of time in the Department of Correction Jackson would serve the rest on community corrections or probation. *Id.* at 36. The State asked the trial court to sentence Jackson to four years for the Level 5 felony and twelve years for the Level 3 felony, to be served consecutively. *Id.* at 33. The trial court found no mitigators and one aggravator, Jackson's juvenile record. As the court explained:

> He needs some help but I don't think this Court has anything to offer him at this point. I mean, he -- he wants to make a change in his life, so he says, but I don't think there's any program, any facility that we can -- you know, if he were over in juvenile court, they got all kinds of things they can do over there. We don't have those things here. The things that we do offer can't address where he is.

> I mean, he's at -- he's at a terrorist position, going in somebody's house, kicking in their door with guns, taking out the babies, robbing people of their stuff. I mean -- and you're right, at his age, I don't want to see him in DOC, but I don't have -- I don't have any other options here. I really don't.

*Id.* at 39. The court imposed consecutive sentences of four years in F2-16 and nine years in F3-8, for a total sentence of thirteen years, to be served in the DOC. The court recommended Jackson for Purposeful Incarceration and said it would consider a sentence modification if Jackson successfully completed the program.

[9]     Jackson now appeals his sentence.

# Discussion and Decision

[10]     Jackson contends that his thirteen-year total sentence for F2-16 and F3-8 is inappropriate and asks us to revise it under Indiana Appellate Rule 7(B), which provides that an appellate court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." "Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *Thompson v. State*, 5 N.E.3d 383, 391 (Ind. Ct. App. 2014) (citing *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008)). Because we generally defer to the judgment of trial courts in sentencing matters, defendants must persuade us that

their sentences are inappropriate. *Schaaf v. State*, 54 N.E.3d 1041, 1044-45 (Ind. Ct. App. 2016).

[11] We first note that Jackson doesn't argue that his sentences should be served concurrently. Indeed, they cannot. According to Indiana Code section 35-50-1-2(e), if, after being arrested for one crime, a person commits another crime while the person is released on bond, "the terms of imprisonment for the crimes shall be served consecutively, regardless of the order in which the crimes are tried and sentences are imposed." Here, after Jackson was released on bond in F2-16, he committed the offense in F3-8. The trial court sentenced Jackson to four years—one year above the advisory term—in F2-16, *see* Ind. Code § 35-50-2-6, and the advisory term of nine years in F3-8, *see* Ind. Code § 35-50-2-5.

[12] Jackson claims that the nature of the offenses supports a reduction in his sentence because "no one was physically hurt in the commission of the offenses." Appellant's Br. p. 12. While no one may have been "physically" hurt, the victims undoubtedly experienced emotional trauma. In the first case, Jackson broke into the home of an elderly couple late at night, pointed a gun at them, and took the child they were fostering. In the second case, Jackson ordered a man into his car at gun point, drove around with the man, and then forced the man to remove some of his clothing and get out of the car.

[13] Jackson also claims that his character supports a reduction in his sentence because he was only seventeen years old when he committed the first offense and eighteen when he committed the second, he pled guilty, and he expressed

remorse. It is true that Jackson was young when he committed the offenses. But Jackson had numerous contacts with the juvenile-justice system before the events in this case yet continued to engage in criminal behavior. After Jackson was charged in F2-16, he was released on electronic monitoring. However, he removed his GPS bracelet. He was taken back into custody and later released on bond. A mere two weeks later, Jackson committed the offense in F3-8. And while these cases were pending, Jackson was arrested in Tippecanoe County, convicted of Level 5 felony robbery, and sentenced to five years. Although Jackson said he was "sorry" and pled guilty, the State dismissed several charges, including a Level 2 felony in F2-16 and the resisting-law-enforcement charge.

[14] Given the serious nature of the offenses and Jackson's escalating criminal behavior, Jackson has failed to persuade us that the four-year sentence (one year above the advisory) in F2-16 and the advisory sentence of nine years in F3-8 are inappropriate. We therefore affirm Jackson's thirteen-year sentence.[3]

[15] Affirmed.

Bailey, J., and Baker, Sr.J., concur.

---

[3] In his reply brief, Jackson argues that the State included "facts" in its statement of facts and argument that were not included in the stipulated factual basis for each cause number. Jackson cites page numbers of the State's brief but does not identify these "facts." *See* Appellant's Reply Br. p. 5. Regardless, we only considered the facts of the offenses from the stipulated factual basis for each cause number.