

FILED

Dec 02 2015, 7:34 am

CLERK
of the supreme court,
court of appeals and
tax court

**ATTORNEY FOR APPELLANT**

Thomas C. Allen
Fort Wayne, Indiana

**ATTORNEYS FOR APPELLEE**

Gregory F. Zoeller
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Thomas M. Kunberger,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

December 2, 2015

Court of Appeals Case No.
02A03-1505-CR-304

Appeal from the Allen Superior
Court

The Honorable Wendy W. Davis,
Judge

Trial Court Cause No.
02D06-1412-F6-495

**Robb, Judge.**

# Case Summary and Issues

[1] Thomas Kunberger pleaded guilty to criminal confinement, a Level 6 felony; strangulation, a Level 6 felony; and domestic battery, a Class A misdemeanor. The trial court accepted Kunberger's plea and sentenced him to two years and 183 days in the Indiana Department of Correction, with twenty-three days of

credit for time served and two years suspended to probation. Kunberger now appeals, raising two issues for our review: (1) whether his convictions for criminal confinement, strangulation, and domestic battery violate double jeopardy; and (2) whether his sentence is inappropriate in light of the nature of the offenses and his character. Concluding Kunberger's convictions do not violate double jeopardy and his sentence is not inappropriate, we affirm Kunberger's convictions and sentence.

## Facts and Procedural History

On December 2, 2014, Officers Will Winston and Jonathan Horne of the Fort Wayne Police Department were dispatched to Kunberger's apartment to investigate a report of domestic violence. When the officers arrived, Kunberger was not present. S.C., Kunberger's ex-fiancée, stated Kunberger had "placed both of his hands around her neck and choked her" and "then lifted her up by her throat and put her on a table holding her there." Appendix of Appellant at 13 (Affidavit for Probable Cause). Afterward, Kunberger followed S.C. around the apartment, "refusing to let her leave." *Id.* Their children, ages two years and eight months, were "sleeping in very close proximity." *Id.*

The State charged Kunberger with criminal confinement, strangulation, and domestic battery, but the police were unable to find Kunberger until several days after the incident. When Kunberger was finally located, he was arrested and ordered to have no contact with the victim. He posted bond on December 16, 2014.

[4]     On March 17, 2015, the State filed a motion to revoke Kunberger's bond after he violated the no-contact order by attempting to make contact with S.C. at her grandfather's house. S.C.'s grandfather told police Kunberger had been outside yelling, threatening to "start a war." *Id.* at 42. When S.C.'s grandfather told Kunberger to leave, Kunberger threatened to "bust him in the nose." *Id.* Then, Kunberger said he would kill S.C., her grandfather, and everyone else if the police were called.

[5]     The trial court granted the State's motion to revoke Kunberger's bond at a hearing on March 23, 2015. When the trial court granted the motion, Kunberger turned to S.C. and mouthed, "I'm going to f***ing get you." *Id.* at 44. Thereafter, on March 27, 2015, the State filed an information alleging Kunberger's courtroom threat, in violation of the no-contact order, amounted to contempt of court. On March 30, 2015, Kunberger pleaded guilty to confinement, strangulation, and domestic battery. He pleaded open, without the benefit of a plea agreement, and provided the following factual basis after the trial court read the charging information:

> [Court:] Do you understand the charges to which you are pleading?
> [Kunberger:] Yes Your Honor. . . .
> [Court:] Do you understand by pleading guilty you are admitting that you committed the crimes that you're charged with?
> [Kunberger:] Yes.
> [Court:] Do you understand that by pleading guilty, you will be found guilty and sentenced without a trial?
> [Kunberger:] Yes.
> * * *

[Court:] Mr. Kunberger, how do you plead to Count I, Criminal Confinement, a Level 6 Felony?

[Kunberger:] Guilty.

[Court:] And how do you plead to Count II, Strangulation, a Level 6 Felony?

[Kunberger:] Guilty.

[Court:] How do you plead to Count III, Domestic Battery, a Class A Misdemeanor?

[Kunberger:] Guilty.

[Court:] And what did you do that makes you guilty?

[Defense counsel:] If I could assist?

[Court:] Yes.

[Defense counsel:] Mr. Kunberger on December 2nd, 2014 were you in Allen County, Indiana?

[Kunberger:] Yes.

[Defense counsel:] And on that date, that location did you knowingly and intentionally confine another person, that being [S.C.], without her consent?

[Kunberger:] Yes.

[Defense counsel:] The same date, the same location did you knowingly and intentionally in a rude, angry manner apply pressure to her neck which impeded her breathing?

[Kunberger:] Yes.

[Defense counsel:] Same date, same location did you also touch [S.C.] in a rude, insolent or angry manner and you guys have a child together?

[Kunberger:] Yes.

[Defense counsel:] And that resulted in bodily injury to her?

[Kunberger:] Yes.

Transcript of Guilty Plea Hearing at 7-8, 11-12. The trial court accepted Kunberger's plea, ordered a presentence investigation report, and scheduled a

sentencing hearing. Prior to the sentencing hearing, the trial court held a contempt hearing and found Kunberger in contempt.[1]

[6] At the sentencing hearing, the State introduced twenty-seven photographs documenting S.C.'s injuries. The photographs are, in defense counsel's own words, "pretty graphic." Transcript of Sentencing at 4. Defense counsel stated Kunberger's romantic relationship with the victim had ended, that "she was seeing another guy," and Kunberger "didn't handle it well, obviously." *Id.* at 5. Kunberger's mother testified her son was so "distraught" after the incident, she had to take him to the hospital, where he was admitted to the psychiatric ward for several days and diagnosed with bipolar disorder. *Id.* Kunberger admitted he "messed up" and described the incident as "the biggest mistake of [his] life." *Id.* at 10.

[7] Defense counsel requested a fully suspended sentence, but the trial court imposed an aggregate sentence of two years and 183 days in the Department of Correction, with twenty-three days of credit for time served and only two years suspended to probation. The trial court explained,

> I do take as mitigating circumstances his remorse this morning
> and the fact that he's taken responsibility. However, that
> remorse . . . is clouded by the fact that you're sitting in custody
> after I've already revoked your bond for threatening to kill . . .
> the victim . . . . [T]here was a no-contact order in place[,] . . . put

---

[1] The trial court sentenced Kunberger to 180 days for contempt, to be served consecutive to the sentence imposed for confining, strangling, and battering the victim in this case. Kunberger does not challenge the contempt finding. Brief of Appellant at 3.

into place to protect the victim in this case[,] and you decide to thumb your nose up at the Court, go over there and threaten to kill. I take that seriously. Additionally, when we were here for a hearing after I revoked your bond because I was afraid there was some threat to the victim in this case, you decided to walk out and pop off and I'm not going to repeat what you said because it's so highly offensive. . . . [A]ppreciating the fact that . . . there probably is some mental illness going on, my first and foremost priority in this courtroom this morning is to protect my community or protect those that maybe can't protect themselves. I take these cases very seriously and I get that you're sitting over there crying and all remorseful, but when I look through these photographs I—I cannot believe—I mean, I'm thankful . . . that she doesn't have some sort of long term . . . effects from this battery and strangulation.

* * *

I don't think I can trust you to get out of the DOC and not make a beeline for the victim's house based on what I've seen. So I'm going to place you on probation . . . .

*Id.* at 11-12, 15. The trial court also noted Kunberger has an active warrant in Florida for a probation violation and two prior misdemeanor convictions for unlawful possession of alcohol and possession of marijuana. This appeal followed.

# Discussion and Decision

## I. Double Jeopardy

### A. Standard of Review

[8] Kunberger contends his convictions for confinement, strangulation, and domestic battery violate the Double Jeopardy Clause of the Indiana

Constitution, which provides, "No person shall be put in jeopardy twice for the same offense." Ind. Const. art. 1, § 14. Specifically, Kunberger argues his convictions violate the actual evidence test announced in *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999):

> [T]wo or more offenses are the "same offense" in violation of Article 1, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense.

*Id.* at 49 (emphasis in original).

[9] We review whether multiple convictions violate double jeopardy de novo. *Jones v. State*, 976 N.E.2d 1271, 1275 (Ind. Ct. App. 2012), *trans. denied*. To find a double jeopardy violation under the actual evidence test, we must conclude there is "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Garrett v. State*, 992 N.E.2d 710, 719 (Ind. 2013) (quoting *Richardson*, 717 N.E.2d at 53). Our supreme court has stated a "reasonable possibility" requires "substantially more than a logical possibility." *Lee v. State*, 892 N.E.2d 1231, 1236 (Ind. 2008).

# B. Confinement, Strangulation, and Domestic Battery

[10] Kunberger pleaded guilty to confinement, strangulation, and domestic battery without the benefit of a plea agreement. The trial court accepted Kunberger's plea and entered judgment of conviction on all counts. Although Kunberger "acknowledged the statutory definitions" of the offenses at the guilty plea hearing, Kunberger maintains he did not "fully describe the situation," meaning the court had "little ability" to determine whether the same act was the basis for all three offenses. Br. of Appellant at 9. Because Kunberger's act of choking S.C. could have been the basis for each of his convictions, Kunberger believes this court must vacate his convictions for strangulation and domestic battery.

[11] Generally, when a defendant pleads guilty, he waives the right to challenge his convictions on double jeopardy grounds. *Mapp v. State*, 770 N.E.2d 332, 334 (Ind. 2002). A defendant who enters a plea agreement to achieve an advantageous position must keep the bargain, our supreme court has explained. *Games v. State*, 743 N.E.2d 1132, 1135 (Ind. 2001). When a defendant pleads guilty without the benefit of a plea agreement, however, this court has held there is no waiver. *Wharton v. State*, No. 49A02-1502-CR-85, slip op. at 3 (Ind. Ct. App. Aug. 26, 2015); *Graham v. State*, 903 N.E.2d 538, 540-41 (Ind. Ct. App. 2009); *McElroy v. State*, 864 N.E.2d 392, 396 (Ind. Ct. App. 2007), *trans. denied*.

[12] In *Wharton*, *Graham*, and *McElroy*, we could review the double jeopardy claims based on the nature of the charges themselves. In *Wharton*, No. 49A02-1502-

CR-85, slip op., the defendant was charged with (1) operating a vehicle while intoxicated, a Class A misdemeanor; (2) operating a vehicle with an alcohol concentration equivalent ("ACE") of 0.08 to 0.15 grams, a Class A misdemeanor; (3) operating a vehicle while intoxicated with a prior conviction, a Level 6 felony; and (4) operating a vehicle with an ACE of 0.08 to 0.15 grams with a prior conviction, a Level 6 felony. The defendant pleaded guilty without the benefit of a plea agreement, and the trial court entered convictions on the felony counts. We held the defendant could raise a double jeopardy claim and that his convictions violated the actual evidence test because both offenses plainly "arose from the same actions"—namely, consuming alcohol in excess and then operating a vehicle. *Id.* at 4; *cf.* Ind. Code § 9-13-2-131 (providing prima facie evidence of intoxication includes evidence the person had an ACE of at least 0.08 grams).

[13]     In *Graham*, 903 N.E.2d 538, the defendant faced seven counts, including one count of unlawful possession of a firearm by a serious violent felon, a Class B felony. The defendant pleaded guilty without the benefit of a plea agreement, and the trial court entered convictions for unlawful possession of a firearm by a serious violent felon, battery, resisting law enforcement, and failure to return to lawful detention. The trial court also found the defendant to be an habitual offender, based in part on a prior robbery conviction that was also used to support his conviction for unlawful possession of a firearm by a serious violent felon. *See* Ind. Code § 35-47-4-5 (2006) (defining unlawful possession of a firearm by a serious violent felon). The trial court attached the habitual

offender enhancement to the defendant's sentence for unlawful possession of a firearm by a serious violent felon. *See* Ind. Code § 35-50-2-8 (2005) (habitual offender enhancement). We held the defendant had not waived his "double enhancement" claim by pleading guilty and the trial court erred by using the same underlying felony to support (1) the conviction for unlawful possession of a firearm by a serious violent felon; and (2) the habitual offender finding used to enhance the sentence on that count.

[14] Finally, in *McElroy*, 864 N.E.2d 392, the defendant was charged with operating a vehicle with an ACE of at least 0.10 grams causing death, a Class C felony; failure to stop after an accident resulting in death, a Class C felony; and operating a vehicle while intoxicated as a Class A misdemeanor. The defendant pleaded guilty without the benefit of a plea agreement, and the trial court entered convictions for operating a vehicle with an ACE of at least 0.10 grams causing death and failure to stop after an accident resulting in death. The defendant argued his convictions violated the prohibition against double jeopardy because both were enhanced to Class C felonies by the fact of the victim's death. We held the defendant could raise a double jeopardy claim but concluded he had not been subjected to double jeopardy because "he has been punished for one act—causing [the victim]'s death—and a second, sequential act—failing to stop after the accident." *Id.* at 398. The charges, we explained, reflected "a policy decision by our legislature that failing to stop after an accident resulting in death is itself a very serious crime completely separate from whether the defendant caused the victim's death." *Id.*

[15]    Here, as the State observes, it is practically impossible to review the double jeopardy claim Kunberger raises. The factual basis for the guilty plea consisted of Kunberger merely admitting the elements of each offense. Kunberger's admissions provided a sufficient factual basis for the guilty plea,[2] but we are left with no basis on which to conclude there was a double jeopardy violation under the actual evidence test. Even if we resorted to the facts recounted in the probable cause affidavit, we could not say with any certainty whether the same act was the basis for all three offenses. Unlike *Wharton*, *Graham*, and *McElroy*, however, the offenses could have been established by "separate and distinct facts." *Richardson*, 717 N.E.2d at 53. Given the time span and the conduct implicated, it is not unreasonable to believe they were.

[16]    To find a double jeopardy violation, we must conclude there is a "reasonable possibility" the facts used to establish the essential elements of one offense may also have been used to establish the essential elements of a second offense. *Garrett*, 992 N.E.2d at 719. Since a "reasonable possibility" requires "substantially more than a logical possibility," *Lee*, 892 N.E.2d at 1236, we cannot conclude Kunberger's convictions violate double jeopardy.

---

[2] A factual basis for a guilty plea is sufficiently established "where a defendant admits the truth of the allegations contained in an information read in open court or where a defendant indicates that he understands the nature of the crime charged and that his guilty plea constitutes an admission of the charge." *Jackson v. State*, 676 N.E.2d 745, 750-51 (Ind. Ct. App. 1997) (quotation omitted), *trans. denied*.

# II. Inappropriate Sentence

[17]   Kunberger further contends his sentence is inappropriate in light of the nature of the offenses and his character. Indiana Appellate Rule 7(B) provides, "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The defendant bears the burden of persuading this court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Whether we regard a sentence as inappropriate turns on "the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). Finally, we note the principal role of appellate review is to "leaven the outliers," not achieve the perceived "correct" result in each case. *Id.* at 1225. We therefore "focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.*

[18]   As to the nature of the offense, the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Childress*, 848 N.E.2d at 1081. Kunberger pleaded guilty to confinement and strangulation, both Level 6 felonies (Counts I and II), and domestic battery, a Class A misdemeanor (Count III). A Level 6 felony carries a possible sentence of six months to two and one-half years, with an advisory sentence of one year. Ind. Code § 35-50-2-7(b). A person who commits a Class A misdemeanor shall

be sentenced to not more than one year. Ind. Code § 35-50-3-2. There is no advisory sentence for a Class A misdemeanor. *See id.*

[19]   Here, the trial court sentenced Kunberger to two years and 183 days in the Department of Correction, with twenty-three days of credit for time served and two years suspended to probation on Count I, to be served concurrently with the same sentence on Count II and one year in the Department of Correction on Count III. In other words, Kunberger received an aggregate sentence of two and one-half years, but the trial court suspended all but six months to probation.

[20]   Kunberger asks this court to fully suspend his sentence, arguing the offenses and his character did not warrant any executed time. Kunberger believes his offenses were "not extraordinary" because S.C. did not suffer "injuries warranting a more severe charge." Br. of Appellant at 12. Had the victim received more serious injuries, Kunberger argues, he would have been charged with aggravated battery as a Level 3 felony. *See* Ind. Code § 35-42-2-1.5 (defining aggravated battery as knowingly inflicting injury on a person that creates risk of death or causes serious permanent disfigurement). We disagree and seriously question Kunberger's logic on this point. If, in evaluating the nature of an offense, we determined an offense was "not extraordinary" because the defendant was not charged with a more serious offense, the "nature of the offense" analysis would lose all meaning. Short of murder, a defendant could always have been charged with a more serious offense, had the facts of the case supported such a charge. Our consideration of the nature of the

offense recognizes the range of conduct that can support a given charge and the fact that the particulars of a given case may render one defendant more culpable than another charged with the same offense. *See, e.g.*, *Hamilton v. State*, 955 N.E.2d 723, 727 (Ind. 2011) (stating in the context of child molesting, the victim's age "suggests a sliding scale in sentencing" because "[t]he younger the victim, the more culpable the defendant's conduct").

[21] At the sentencing hearing, defense counsel stated Kunberger's romantic relationship with S.C. had ended and Kunberger "didn't handle it well, obviously." Tr. of Sentencing at 5. According to the probable cause affidavit, Kunberger choked S.C. during an argument, after announcing if he could not "have" her, nobody would. App. of Appellant at 14. She "lost all ability" to breathe and may have also lost consciousness. *Id.* at 13 (stating S.C. told police "it was like curtains coming down over my eyes"). Kunberger blamed S.C. for what he had done, asking, "Why'd you make me do this[?]" *Id.* at 14. Then, Kunbuger followed S.C. around the apartment, "refusing to let her leave." *Id.* at 13. Kunberger "was so adamant about keeping her in the apartment[,] he even refused to allow her to go the bathroom alone . . . ." *Id.* at 14. When the police arrived, S.C. had scratches on her face and neck. She experienced dizziness, blurry vision, headache, and a sore throat for several days and "petechiae to literally her entire facial area above the area of restriction." *Id.* at

13-14.[3]  The photographs of her injuries admitted at the sentencing hearing also show hemorrhaging in both eyes.  *See, e.g.*, State's Exhibit 19.  With these facts in mind we cannot say Kunberger's sentence is inappropriate in light of the nature of his offenses.

[22]  As to Kunberger's character, we agree with the trial court that his remorse, acceptance of responsibility, and alleged mental health issues are clearly overshadowed by his flagrant violations of the no-contact order issued to protect the victim from further violence.  Kunberger mouthed, "I'm going to f***ing get you," in open court, at a hearing to address an earlier instance of harassment in violation of the no-contact order.  App. of Appellant at 44.  In doing so, Kunberger demonstrated an intolerable lack of respect for the court, the law, and the mother of his children.  Given the nature of S.C.'s injuries and Kunberger's behavior prior to sentencing, Kunberger has failed to persuade this court that his sentence is inappropriate.  Both the nature of the offense and Kunberger's character support the aggregate sentence of two and one-half years, with all but six months suspended to probation.[4]

---

[3] A petechia is "a minute reddish or purplish spot containing blood that appears in skin or mucous membrane as a result of localized hemorrhage."  Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/petechia (last visited Nov. 17, 2015).

[4] To the extent Kunberger argues the trial court abused its discretion by failing to properly weigh aggravating and mitigating factors, our supreme court's decision in *Anglemyer* makes clear "the trial court no longer has any obligation to weigh aggravating and mitigating factors against each other when imposing a sentence and thus a trial court can not now be said to have abused its discretion in failing to properly weigh such factors." *Kimbrough v. State*, 979 N.E.2d 625, 628 (Ind. 2012) (quoting *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218) (internal quotation marks omitted).

# Conclusion

Kunberger's convictions for criminal confinement, strangulation, and domestic battery do not violate double jeopardy, and his sentence is not inappropriate in light of the nature of the offenses and his character. We therefore affirm Kunberger's convictions and sentence.

Affirmed.

Vaidik, C.J., concurs.

Pyle, J., concurs in part, dissents in part.

Thomas M. Kunberger,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

Court of Appeals Case No.
02A03-1505-CR-304

**Pyle, Judge, dissenting.**

[25] I agree with my colleagues' opinion concerning whether double jeopardy principles were violated in this case. However, I respectfully dissent from the finding that the trial court's sentence was appropriate. Our Supreme Court has determined that when we exercise our authority to review and revise criminal sentences, we may impose a more severe sentence than that ordered by the trial court. *McCullough v. State*, 900 N.E.2d 745 (Ind. 2009). In this case, the trial court effectively sentenced Kunberger to two-and-one-half years, with only six months executed. I believe that Kunberger's behavior toward the victim, combined with his outrageous lack of respect for the court's authority and his failure to abide by its no-contact order, warrant a fully executed sentence to the Department of Correction. In all other respects, I concur with my colleagues.