## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 14 2018, 9:13 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ronald J. Moore
The Moore Law Firm, LLC
Richmond, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Dante Faulkner, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | August 14, 2018 <br><br> Court of Appeals Case No. 18A-CR-415 <br><br> Appeal from the Wayne Superior Court <br><br> The Honorable Darrin M. Dolehanty, Judge <br><br> Trial Court Cause No. 89D03-1706-F5-71 |

**Kirsch, Judge.**

[1] Dante Faulkner ("Faulkner") pleaded guilty to operating a motor vehicle after a lifetime forfeiture of driving privileges,[1] a Level 5 felony, resisting law enforcement[2] as a Class A misdemeanor, false informing[3] as a Class B misdemeanor, and possession of paraphernalia[4] as a Class C misdemeanor, and he was sentenced to an aggregate executed sentence of fifty months to be served in the Indiana Department of Correction. Faulkner appeals his sentence, raising the following issue for review: whether his sentence is inappropriate in light of the nature of the offense and the character of the offender.

[2] We affirm.

## Facts and Procedural History

[3] On May 17, 2017, Patrolman Ryan Riggs of the Wayne County Sheriff's Department ("Officer Riggs") was traveling northbound on Salisbury Road in Richmond, Wayne County, Indiana when he observed a car, driven by a person later identified as Faulkner, traveling southbound at forty-five miles per hour in a thirty miles-per-hour zone. Officer Riggs turned his police vehicle around and initiated a traffic stop of Faulkner's vehicle. Officer Riggs approached the vehicle and asked Faulkner for his name and date of birth. Faulkner told

---

[1] *See* Ind. Code § 9-30-10-17.

[2] *See* Ind. Code § 35-44.1-3-1(a).

[3] *See* Ind. Code § 35-44.1-2-3(d).

[4] *See* Ind. Code § 35-48-4-8.3.

Officer Riggs that his name was La'Ray Faulkner and that his date of birth was April 1, 1981. *Tr. Vol. II* at 30, 33. Officer Riggs became suspicious after he noticed that Faulkner had difficulty remembering how to spell his name and remembering his date of birth. *Appellant's App. Vol. II* at 13.

[4] Officer Riggs then returned to his squad car to conduct a BMV inquiry using the identification information that Faulkner provided. However, after Officer Riggs stepped away, Faulkner exited his own vehicle and ran from the scene on foot. Officer Riggs ordered Faulkner to stop, but Faulkner continued to flee. Officer Riggs began to pursue Faulkner on foot; however, he eventually lost sight of Faulkner and was unable to locate him.

[5] Officer Riggs later discovered that Faulkner had provided incorrect identifying information to him. *Id*. at 14. La'Ray Faulkner, born April 1, 1981, was actually a female who, at the time of the stop, was married to Dante Faulkner. *Id*. After reviewing a booking photograph taken of Faulkner from a prior arrest, Officer Riggs confirmed that Faulkner was actually the driver of the vehicle that he had stopped earlier that day. When Officer Riggs had positively identified Faulkner, he ran a subsequent BMV inquiry, which revealed that Faulkner was a habitual traffic violator and that his license was subject to a lifetime suspension. *Id.*; *Tr. Vol. II* at 31.

[6] Per department policy, Officer Riggs conducted an inventory search of Faulkner's car. During the search, he found a glass pipe with burn marks that also contained a white residue. *Tr. Vol. II* at 31-32. Faulkner later admitted

that he intended to use the pipe to introduce illegal substances into his body. *Id*. at 32. Faulkner regularly smokes marijuana, and he had begun using methamphetamine just a few months prior to the May 17 incident. *Id*. at 32, 52.

[7] The State charged Faulkner with one count of Level 5 felony operating a motor vehicle after lifetime forfeiture of driving privileges, one count of Class A misdemeanor resisting law enforcement, one count of Class B misdemeanor false informing, and one count of Class C misdemeanor possession of paraphernalia. On June 15, 2017, a warrant was issued for Faulkner's arrest. After Faulkner was arrested, he filed with the trial court a notice of alibi defense on August 8, 2017, which stated that "on the date and time of the alleged offense as charged, the Defendant was at his girlfriend's house on Ridge Street in Richmond, IN." *Appellant's App. Vol. II* at 21. A second warrant was issued for Faulkner's arrest after he failed to appear for a pre-trial conference on October 23, 2017. Faulkner eventually pleaded guilty as charged on December 18, 2017.

[8] During the course of the pre-sentence investigation, it was discovered that Faulkner had fourteen prior misdemeanor convictions and one prior felony conviction. These included numerous driving-related convictions, including: Class A misdemeanor operating while intoxicated; Class A misdemeanor operating while intoxicated endangering a person; Class B misdemeanor reckless driving; Class A misdemeanor operating a vehicle as a habitual traffic offender; Class D felony operating a vehicle as a habitual traffic violator, and

Class C misdemeanor operating a vehicle with a schedule I or II controlled substance in a person's body. *Id.* at 43-44. Faulkner had his driver's license suspended at least seventeen times between February 18, 2000, and November 8, 2015. *Id.* at 57-58. At the time of his sentencing, Faulkner had three active suspensions against his license, which included suspensions for his habitual traffic violator status, for failure to appear for a driver safety program, and for failure to comply with an out-of-state violation from Ohio. *Id.*

[9]   A sentencing hearing was held on January 19, 2018. Faulkner testified that he fled from the scene because he "was afraid of consequences" of his decision to drive with a suspended license and stated that he "was under a lot of stress at the time, as far as me and my wife's relationship went sour, and I just made some bad decisions which ultimately led to me driving when I knew I wasn't supposed to be driving." *Tr. Vol. II* at 44. Faulkner admitted to regularly using marijuana and methamphetamine, but that he was "not ashamed" of his drug use. *Id.* at 52. The trial court sentenced Faulkner to fifty months for Count I and to sixty days for each of the remaining counts. The trial court noted that Faulkner had taken responsibility for his actions by pleading guilty and ordered his sentences to be served concurrently. *Id.* at 69. Faulkner now appeals his fifty-month sentence.

# Discussion and Decision

[10] Faulkner contends[5] that his fifty-month executed sentence for his Level 5 felony operating a motor vehicle after lifetime forfeiture of driving privileges conviction[6] is inappropriate. Pursuant to Indiana Appellate Rule 7(B), this Court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Our Supreme Court has explained that the principal role of appellate review should be to attempt to leaven the outliers, "not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We independently examine the nature of Faulkner's offense and his character under Appellate Rule 7(B) with substantial deference to the trial court's sentence. *Satterfield v. State*, 33 N.E.3d 344, 355 (Ind. 2015). "In conducting our review, we do not look to see whether the defendant's sentence is appropriate or if another sentence might be *more* appropriate; rather, the test is whether the sentence is 'inappropriate.'" *Barker v. State*, 994 N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans. denied*. Faulkner bears the burden of persuading us that his sentence is inappropriate. *Id*.

---

[5] Initially, the State asserts that Faulkner's notice of appeal was not timely and that his right to appeal has been forfeited. Assuming without deciding that Faulkner's appeal was timely filed, we conclude that his sentence is not inappropriate.

[6] Faulkner acknowledges that this is a general appeal of the sentence, but is only asking for a review of the sentence on Count I. The remaining sentences, being concurrent and substantially shorter, are not in question.

[11] When determining whether a sentence is inappropriate, the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Kunberger v. State*, 46 N.E.3d 966, 973 (Ind. Ct. App. 2015); *Thompson v. State*, 5 N.E.3d 383, 391 (Ind. Ct. App. 2014). Faulkner was convicted of a Level 5 felony, and the advisory sentence for a Level 5 felony conviction is three years, with a range of between one and six years. Ind. Code § 35-50-2-6(b). Faulkner received a sentence of fifty months, which is equivalent to four years and two months.

[12] As this court has recognized, "The nature of the offense is found in the details and circumstances of the commission of the offense and the defendant's participation." *Croy v. State*, 953 N.E.2d 660, 664 (Ind. Ct. App. 2011). On appeal, Faulkner contends that his sentence is not appropriate as to the nature of his offense because his offense was not evil by nature and there was no damage to property or persons due to his offense. He asserts that the sentence imposed by the trial court is not commensurate with the nature of his offense.

[13] The nature of Faulkner's offense shows that he was observed operating a vehicle when his driver's license had been forfeited for life. After a traffic stop was initiated, Faulkner gave the officer a false name and birthdate, which showed that he knew his actions of driving the vehicle were wrong. When the officer went back to his police vehicle to run a computer check on the information given to him by Faulkner, Faulkner fled the scene on foot and failed to stop even after the officer ordered him to do so. These actions further demonstrate Faulkner's attempts to avoid apprehension. After fleeing the

police, Faulkner successfully evaded the police for almost a month. Faulkner attempted to mislead the trial court after he had been arrested by filing a notice of alibi defense stating that he was with his girlfriend at the time of the offense, a statement that he knew to be false. We conclude that the nature of the offense does not warrant a reduction in Faulkner's imposed sentence.

[14] "The character of the offender is found in what we learn of the offender's life and conduct." *Croy*, 953 N.E.2d at 664. When considering the character of the offender, one relevant fact is the defendant's criminal history. *Johnson v. State*, 986 N.E.2d 852, 857 (Ind. Ct. App. 2013). Although he has a lengthy criminal history, Faulkner contends that his criminal history is outweighed by his acceptance of responsibility and the fact that he is employable and willing to work to further his education. He claims that "[h]is current character is not reflective of the lengthy misdemeanor record he has amassed" and that "[h]is single prior felony conviction would suggest an independent review and a downward departure from the sentence imposed." *Appellant's Br.* at 17.

[15] Regarding Faulkner's character, he has a lengthy criminal history consisting of fourteen prior misdemeanor convictions and one prior felony conviction. *Appellant's App. Vol. II* at 42-44. Faulkner has had six convictions for driving-related offenses since 2000, including his felony conviction for operating a vehicle as a habitual traffic violator in 2011, which resulted in a lifetime suspension of his driver's license. Because the present offense involved a driving-related offense and his criminal history contains numerous offenses involving driving, we also look to Faulkner's driving record, which shows that

his driver's license has been suspended seventeen times since the year 2000. *Id.* at 57-58. At the time of his sentencing, three of the suspensions were still active with an "indefinite" expiration date. *Id.* Faulkner's criminal and driving records show that past punishments, including a lifetime suspension of his license, have not been deterred him from committing driving-related offenses. Additionally, when Faulkner's vehicle was inventoried after he fled the scene of the traffic stop during the present offense, a glass pipe was discovered that tested positive for methamphetamine. Faulkner admitted that he used marijuana regularly and has recently begun using methamphetamine in order to help him stay awake during his night shifts. *Tr. Vol. II* at 52. Further, although Faulkner was employed and was also enrolled in school at the time of the current offenses, he used his employment as a justification to commit driving-related offenses by blaming his driving on the fact that he had to drive to work even though he neglected to pursue legal avenues to restore his driving privileges. *Id.* at 45, 68. We do not believe that Faulkner's character warrants a revision of his sentence.

[16] Our task on appeal is not to determine whether another sentence might be more appropriate; rather, the inquiry is whether the imposed sentence is inappropriate. *Barker*, 994 N.E.2d at 315. Faulkner has failed to carry his burden of establishing that his sentence is inappropriate in light of the nature of the offense and his character.

[17] Affirmed.

Vaidik, C.J., and Riley, J., concur.