## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 08 2019, 10:01 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jennifer A. Joas
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Taylor C. Byrley
Angela Sanchez
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Versal W. Strunk, | April 8, 2019 |
| *Appellant-Defendant,* | Court of Appeals Case No. 18A-CR-2272 |
| v. | Appeal from the Ripley Circuit Court |
| State of Indiana, | The Honorable Ryan J. King, Judge |
| *Appellee-Plaintiff.* | Trial Court Cause No. 69C01-1710-F1-11 |

**Kirsch, Judge.**

[1] Versal W. Strunk ("Strunk") pleaded guilty to child molesting[1] as a Level 1 felony and was sentenced to fifty years executed and determined to be a credit restricted felon. Strunk appeals and raises the following issue for our review: whether his fifty-year executed sentence is inappropriate in light of the nature of the offense and the character of the offender.

[2] We vacate and remand.

## Facts and Procedural History

[3] Strunk was born in 1986. *Tr. Vol. 2* at 13. Strunk's wife babysat children in the couple's residence in Osgood, Ripley County, Indiana. *Appellant's App. Vol. II* at 49. E.W. and L.W. were two of the children that Strunk's wife watched, and E.W. and L.W. would sometimes stay overnight at Strunk's residence when their mother had to work early the next morning. *Id*. at 13, 64. During the time that Strunk's wife watched E.W. and L.W., Strunk engaged in sexual conduct with them. *Id*. at 49-50, 63-68. The molestation began when Strunk and his wife first began watching the children and continued until the police began their investigation. *Id*. at 63.

[4] On September 26, 2017, L.W., who was seven years old at the time, told her mother that Strunk had "touched" her. *Id*. at 12. The children's mother took them to the police department where they were interviewed. During her

---

[1] *See* Ind. Code § 35-42-4-3(a)(1).

interview, L.W. told the police that Strunk would give her a bath and touch her everywhere on her body with his hands. *Id.* at 63. L.W. stated that he had given her a bath more than one time and stated that is was "not okay" for him to touch her "bad body parts." *Id.* L.W. further stated that Strunk's hands would go "inside the folds of her vagina and between the cheeks of her butt" when he gave her a bath. *Id.* L.W. told the police that Strunk would wake up her brother, E.W., in the middle of the night to go into the bathroom to play cards. *Id.* L.W. indicated that when E.W. had to use the toilet, Strunk would sit on the toilet with his clothes off and have E.W. urinate between Strunk's legs. *Id.* Strunk told L.W. that she had to "keep it a secret" or he "would go to jail." *Id.* L.W. told the police that "if mommy wouldn't [have] known about it, it would have kept going." *Id.*

[5] The police also interviewed E.W., who was eight years old at the time, and in the interview, E.W. referred to Strunk as "uncle" although they are not related. *Id.* E.W. indicated that Strunk would wake him up and take him to the bathroom to "play slap jack and if you lose you have to drink." *Id.* at 64. E.W. stated that Strunk would make him urinate between Strunk's legs "all the time." *Id.* E.W. said that Strunk would put "sex.com" on his phone when E.W. was urinating between his legs and that Strunk would have his underwear around his ankles. *Id.* E.W. indicated that Strunk told him that his son had done this before. *Id.* E.W. stated that Strunk would show him "sex videos" and "how women get pregnant." *Id.* E.W. further stated that Strunk "touched his wiener and butt" and "had taken pictures of his wiener." *Id.* E.W. told the police that

Strunk "puts his finger up my butt" and that it "feels weird." *Id*. E.W. stated that when Strunk gave him a bath he would use his hands on his "weiner" and start rubbing him. *Id*. E.W. also stated that Strunk had shown E.W. his penis and that Strunk "jacks off and white stuff comes out onto the toilet paper that [Strunk] flushes down the toilet." *Id*. E.W. indicated that, when he was in bed at Strunk's house, Strunk would "suck on his peebird" and that it "feels weird." *Id*. E.W. stated that Strunk told him "it will feel good when [you are] thirteen." *Id*. E.W. told the police that Strunk told him to "keep this a secret" because Strunk "doesn't want mommy and daddy to know" and he "doesn't want to go to jail." *Id*. E.W. indicated that all this happened when he was seven and eight years old. *Id*.

[6] Strunk met with the police and voluntarily admitted that he has a "sexual problem" with young boys and that he has had children urinate on him. *Id*. at 65. Strunk stated that L.W. had urinated on him several times and acknowledged that this was a sexual fantasy of his. *Id*. Strunk also stated that he told L.W. the only way he would give her a bath is if she urinated on him. *Id*. Strunk admitted that E.W. has probably urinated on him at least ten times and that he would "tell [E.W.] things about sex hoping that [E.W.] would want to act on them." *Id*. Strunk would sleep in the same bed with E.W. and would "jack him most of the time with [E.W.'s] underwear pulled up and on the outside of E.W.'s underwear." *Id*. Strunk also took E.W.'s underwear down and masturbated E.W., telling E.W. that "it will feel a lot different when you become a teenager." *Id*. Strunk also told the police that he had given E.W. "a

blowjob" two times and that E.W. told him, "I don't really like that." *Id.* Strunk admitted that he would place E.W. on top of him and show E.W. "the feeling of what guys do on top of girls" and acknowledged that he and E.W. were acting out having sex with their underwear still on. *Id.* Strunk also admitted that he had masturbated in front of E.W. probably ten times in the bathroom after E.W. urinated on him. *Id.* at 66. Strunk stated that he had offered for E.W. to put his penis in Strunk's butt "for the experience of what it would be like if you're doing it with a woman when you get older." *Id.* at 67.

[7] Strunk stated that he had "been wanting to put an end to it" because he did not feel right doing it and "didn't want to lose his kids." *Id* at 65. Strunk told the police that he told L.W. and E.W. not to say anything to anyone and that "if you say anything I won't be able to do anything and then come back, and you guys won't be able to see me again." *Id.* at 67. Strunk also told L.W. and E.W. that he would probably go to prison. *Id.*

[8] Strunk also later admitted to the police that his son had urinated on him about three times, and that his son has seen him masturbate four or five times. *Id.* at 68. Strunk stated that his daughter may have also walked in on him masturbating once or twice. *Id.* Strunk also admitted that he "did stuff with his nephew" when Strunk was younger. *Id.* at 66.

[9] On October 4, 2017, the State charged Strunk with two counts of Level 1 felony child molesting, alleging that he performed or submitted to intercourse or other sexual conduct with E.W. when Strunk was over the age of twenty-one and

E.W. was under the age of fourteen. On May 22, 2018, Strunk entered into a plea agreement under which he would plead guilty to one count of Level 1 felony child molesting and the other count would be dismissed.

[10] A sentencing hearing was held on August 23, 2018, at which the trial court considered aggravating and mitigating circumstances. As aggravating circumstances, the trial court found: (1) Strunk "committed a multitude of sex offenses going far beyond the single offense" to which he pleaded guilty; (2) Strunk's "character indicate[d] there is a substantial likelihood he will reoffend"; (3) he violated "a position of care, custody, or control of the victim"; (4) he "committed a crime of violence and said commission occurred in the presence of another child, L.W., who was not the victim"; and (5) "E.W. has already and will continue to suffer from significant psychological and emotional impact that will be with him forever." *Id*. at 108-09. As mitigating circumstances, the trial court found: (1) Strunk lacked a criminal history; and (2) Strunk is "mentally slow." *Id*. at 109. Finding that the aggravating factors significantly outweighed the mitigating factors, the trial court sentenced Strunk to a maximum sentence of fifty years and determined him to be a credit restricted felon. Strunk now appeals his sentence.

## Discussion and Decision

[11] Pursuant to Indiana Appellate Rule 7(B), this court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the [c]ourt finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Our Supreme Court has explained

that the principal role of appellate review should be to attempt to leaven the outliers, "not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We independently examine the nature of Strunk's offense and his character under Appellate Rule 7(B) with substantial deference to the trial court's sentence. *Satterfield v. State*, 33 N.E.3d 344, 355 (Ind. 2015). "In conducting our review, we do not look to see whether the defendant's sentence is appropriate or if another sentence might be more appropriate; rather, the test is whether the sentence is 'inappropriate.'" *Barker v. State*, 994 N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans. denied*. Whether a sentence is inappropriate ultimately depends upon "the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *Cardwell*, 895 N.E.2d at 1224. Strunk bears the burden of persuading this court that his sentence is inappropriate. *Id*.

[12] Strunk argues that his maximum fifty-year sentence is inappropriate in light of the nature of the offense and his character. Specifically, he contends that, although the crime of child molesting is heinous by nature and will likely inflict permanent damage to the victims, such harm is accounted for in the sentencing guidelines, especially where, as here, Strunk did not use force or physically harm E.W. Strunk asserts that his crime is not the worst of offenses. He further maintains that, when looking at his character, it is clear that his maximum sentence is inappropriate. Strunk claims that his lack of a criminal history, his

learning disability, and his traumatic and abusive childhood lend credence to his contention that his sentence is inappropriate.

[13] When determining whether a sentence is inappropriate, the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Kunberger v. State*, 46 N.E.3d 966, 973 (Ind. Ct. App. 2015); *Thompson v. State*, 5 N.E.3d 383, 391 (Ind. Ct. App. 2014). Strunk was convicted of a Level 1 felony and determined to be a credit restricted felon, and the advisory sentence for a Level 1 felony conviction as a credit restricted felon is thirty years, with a range of between twenty and fifty years. Ind. Code §§ 35-50-2-4(c), 35-31.5-2-72(1). Strunk received a sentence of fifty years executed for his Level 1 felony conviction.

[14] As this court has recognized, the nature of the offense is found in the details and circumstances of the commission of the offense and the defendant's participation. *Perry v. State*, 78 N.E.3d 1, 13 (Ind. Ct. App. 2017). With respect to the nature of the offense, Strunk repeatedly subjected E.W. and L.W. to sexual abuse. These acts occurred when the children were staying at his residence in the care of him and his wife who were babysitting E.W. and L.W. Strunk repeatedly abused E.W. by forcing him to urinate on Strunk while Strunk masturbated and exposed E.W. to pornographic materials. Strunk also touched E.W.'s genitals, put his finger in E.W.'s butt, and performed oral sex on E.W. Additionally, Strunk forced L.W. to urinate on him if she wanted to take a bath. Although Strunk was only convicted of one offense, Strunk actually committed numerous and repeated offenses against E.W., and in doing

so, he violated a position of trust. We, therefore, do not agree that the nature of Strunk's offense makes his sentence inappropriate.

[15] However, we agree that Strunk's sentence is inappropriate considering his character.[2] The character of the offender is found in what we learn of the offender's life and conduct. *Perry*, 78 N.E.3d at 13. When considering the character of the offender, one relevant fact is the defendant's criminal history. *Johnson v. State*, 986 N.E.2d 852, 857 (Ind. Ct. App. 2013). Strunk has no criminal record and was thirty-two years old at the time of sentencing. The evidence showed that Strunk suffered significant abuse as a child. *Appellant's App. Vol. II* at 41. Until the age of four and a half, he suffered physical, emotional, and sexual abuse at the hands of his mother and grandmother. *Id*. Later, when living with his adoptive parents, Strunk was sexually abused by his foster brother from the age of seven until fourteen, an older nephew on his adoptive mother's side of the family from the age of six until fifteen, and his adoptive father's brother from the age of fifteen until eighteen. *Id*. Strunk reported that he suffers from Post-Traumatic Stress Disorder because of the childhood abuse he experienced and that, although he completed twelve years of school, he has a learning disability and only has a third-grade educational level. *Id*. at 42-43.

---

[2] While we must consider both the nature of the offense and the character of the offender in determining whether a sentence is inappropriate, a defendant need not necessarily prove both prongs for us to find a sentence inappropriate. *See Conner v. State*, 58 N.E.3d 215, 218-19 (Ind. Ct. App. 2016).

Strunk occupied a position of trust with E.W. and L.W. that he betrayed, and his offenses are undeniably reprehensible; however, Strunk's learning disability and his own history of abuse must also be factored into the balance of all the factors. In addition, Strunk has shown a nexus between his mental health and the crimes which he committed. See *Steinberg v. State*, 941 N.E.2d 515, 534 (Ind. Ct. App. 2011), *trans. denied.* Thus, while we find that an enhanced sentence is appropriate, the fifty-year maximum sentence as a credit restricted felon is not. We, therefore, invoke our authority under Indiana Appellate Rule 7(B) and revise Strunk's sentence to thirty-five years executed as a credit restricted felon. We remand the case to the trial court with instructions to enter such sentence.

Vacated and remanded.

Riley, J., and Robb, J., concur.