## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 15 2020, 8:58 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jared M. Thomas
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill
Attorney General of Indiana

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Andrew Michael Wilke-Breightling, *Appellant-Defendant,* | September 15, 2020 |
| | Court of Appeals Case No. 19A-CR-1267 |
| v. | Appeal from the Vanderburgh Circuit Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable David D. Kiely, Judge |
| | Trial Court Cause No. 82C01-1808-F4-5613 |

**Darden, Senior Judge.**

# Statement of the Case

Andrew Michael Wilke-Breightling ("Wilke-Breightling") pleaded guilty to one count of burglary,[1] a Level 4 felony; one count of auto theft,[2] a Level 5 felony; one count of theft of a firearm,[3] a Level 6 felony; and one count of theft of property valued at between $750 to $50,000,[4] a Level 6 felony. He now appeals after his guilty plea and sentencing, contending that his sentence is inappropriate in light of the nature of the offenses and the character of the offender. We affirm.

# Issue

The sole issue presented for our review is whether Wilke-Breightling's sentence is inappropriate in light of the nature of the offenses and the character of the offender.[5]

---

[1] Ind. Code § 35-43-2-1 (2014).

[2] Ind. Code § 35-43-4-2(a)(2)(C)(i) (2019).

[3] Ind. Code § 35-43-4-2(a)(1)(B)(i) (2019).

[4] Ind. Code § 35-43-4-2(a)(1)(A) (2019).

[5] Wilke-Breightling appears to advance an argument that the trial court abused its discretion in sentencing by improperly weighing the aggravating and mitigating factors. We address that argument at the end of our analysis.

# Facts and Procedural History

[3]     Prior to leaving town for a short visit, Steven C. Hairston ("Hairston")[6] left the keys to his truck with his neighbor, Linda Wilke ("Linda"). Hairston asked Wilke-Breightling, Linda's then thirty-year-old grandson, to move the truck from the street and into Hairston's yard because it was not properly registered. Hairston also paid Linda to have Wilke-Breightling mow his lawn while he was away.

[4]     When Hairston returned to Evansville, he was notified by Vanderburgh County Animal Control that his dog was in their shelter. Hairston found this to be odd because a friend was supposed to be caring for his dog while he was out of town. On August 16, 2018, when Hairston went to his home, he discovered that his truck was missing, the back door of his home was open, and the interior of his home was ransacked. He observed that items of personal property were missing, such as three flatscreen televisions, several firearms including a Glock 22, a Mossberg 715T rifle, and a Hi-Point .45 caliber carbine.

[5]     Hairston, secretly recorded a conversation on his cell phone, when he went to Linda's house to ask her about the theft. Initially, Linda told him that she did not know anything about the theft and that she had not seen Wilke-Breightling recently. Hairston then told Linda that he was going to call the police. At that

___

[6] We refer to the victim's name as it appears in the probable cause affidavit.

point, she told Hairston that he could have his property back if he did not call the police.

[6] When Hairston entered Linda's house, he immediately recognized several items of his personal property inside. They included his rifle scope, his gun magazine, and his flat screen television. Upon seeing the items, Hairston called 911.

[7] Detective M. Evans of the Evansville Police Department was one of the officers who responded to the 911 call. He interviewed both Linda and Hairston. Hairston relayed the facts as stated above to Detective Evans and agreed to forward the recording of the conversation he had with Linda to him. Although he could not immediately produce the serial numbers for his firearms, Hairston said he would search for them in his records and would provide the information later, if found. The items found in Linda's home were subsequently returned to Hairston.

[8] Linda, who had been mirandized prior to Detective Evans' arrival, told him that there were items of personal property that belonged to Hairston inside her home, but that she did not see Wilke-Breightling bring them into her home. When asked if Wilke-Breightling lived there with her, Linda disclosed that he had not lived there for some time, although he had previously lived there with her. She stated that he did not really have a home but that he had stayed with her the previous night.

[9] Linda consented to a search of her home and the items mentioned above were found in the only bedroom in the home. Linda later acknowledged that she knew the television was from Hairston's home. She said that when she asked Wilke-Breightling about the items of personal property, he said that Hairston's home had been abandoned.

[10] A crime scene detective processed and photographed the home and the items of personal property, which were returned to Hairston.

[11] Wilke-Breightling was not present at the scene when the officers arrived; however, Linda gave them an address where she had last seen him. She also told the officers that two other individuals had stayed at her home during the period of time that Hairston was out of town. Linda did not know whether Wilke-Breightling was still in possession of Hairston's truck or what he had done with it.

[12] On August 17, 2018, the State charged Wilke-Breightling with burglary, auto theft, theft of a firearm, and theft of property valued at between $750 to $50,000. On March 29, 2019, Wilke-Breightling indicated on the record that he intended to plead guilty without a sentencing recommendation by the State. Wilke-Breightling's sentencing hearing was held on May 6, 2019. The trial court imposed the following sentence: eight years for his burglary conviction; five years for auto theft; two years for theft of a firearm; and, two years for theft of property valued at $750 and $50,000, with each of the sentences to be served

concurrently; and, concurrently with an unrelated sentence under a separate cause number.

## Discussion and Decision

[13] Wilke-Breightling contends that his sentences are inappropriate in light of the nature of his offenses and his character. Pursuant to Indiana Appellate Rule 7(B), this court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the [c]ourt finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Our Supreme Court has explained that the principal role of appellate review should be to attempt to leaven the outliers, "not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We independently examine the nature of Wilke-Breightling's offenses and his character under Appellate Rule 7(B) with substantial deference to the sentence imposed by the trial court. *See Satterfield v. State*, 33 N.E.3d 344, 355 (Ind. 2015). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[14] "In conducting our review, we do not look to see whether the defendant's sentence is appropriate or if another sentence might be more appropriate; rather, the test is whether the sentence is 'inappropriate.'" *Barker v. State*, 994

N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans. denied*. Whether a sentence is inappropriate ultimately depends upon "the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad other factors that come to light in a given case." *Cardwell*, 895 N.E.2d at 1224. Wilke-Breightling bears the burden of persuading us that his sentence is inappropriate. *See id*.

[15] When determining whether a sentence is inappropriate, the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Kunberger v. State*, 46 N.E.3d 966, 973 (Ind. Ct. App. 2015); *Thompson v. State*, 5 N.E.3d 383, 391 (Ind. Ct. App. 2014), *trans denied*. Here, Wilke-Breightling was convicted of Level 4 felony burglary. The sentencing range for a Level 4 felony is a fixed term of between two (2) and twelve (12) years, with the advisory sentence being six (6) years. Ind. Code § 35-50-2-5.5 (2014). Wilke-Breightling received a sentence of eight years. He was also convicted of Level 5 felony auto theft with a sentencing range of a fixed term of between two (2) and eight (8) years, with the advisory sentence being four (4) years. Ind. Code § 35-50-2-6 (2014). He received a sentence of five years for this offense. Wilke-Breightling received a two-year sentence for his Level 6 felony theft of a firearm conviction. The sentencing range for that offense is a fixed term of between six (6) months and three (3) years, with the advisory sentence being one and one-half (1½) years. Ind. Code § 35-50-2-7 (2016). Wilke-Breightling received a two-year sentence for his conviction of Level 6 felony theft of property valued at between $750 to $50,000. The sentencing

range for that offense is a fixed term of between six (6) months and three (3) years, with the advisory sentence being one and one-half (1½) years. *Id*. The trial court imposed sentences that were slightly above the advisory sentence or starting point for each offense.

[16] We first turn to Wilke-Breightling's character to determine whether such supports a downward revision of his sentence. The record reveals no substantial virtuous traits or persistent examples of good character, but, instead, reveals a significant long-term criminal history. When considering a defendant's character for purposes of Appellate Rule 7(B) analysis, a defendant's criminal history is one factor. *Garcia v. State*, 47 N.E.3d 1249, 1251 (Ind. Ct. App. 2015), *trans. denied*. The significance of criminal history varies based on the gravity, nature, and number of prior offenses in relation to the current offense. *Id*.

[17] We also note that, "[a] record of arrest, without more, does not establish the historical fact that a defendant committed a criminal offense and may not be properly considered as evidence of criminal history." *Cotto v. State*, 829 N.E.2d 520, 526 (Ind. 2005) (citing *Scheckel v. State*, 620 N.E.2d 681, 683 (Ind. 1993)). "However, a record of arrest, particularly a lengthy one, may reveal that a defendant has not been deterred even after having been subject to the police authority of the State." *Id*. "Such information may be relevant to the trial court's assessment of the defendant's character in terms of the risk that he will commit another crime." *Id*.

[18]     In 2007, Wilke-Breightling was convicted of possession or use of marijuana in Maricopa County, Arizona, and was sentenced to three years on probation. However, because of a probation violation, seventy-five days of probation were revoked. Also, in 2007, Wilke-Breightling was convicted of unlawful use of a means of transportation in Maricopa County, Arizona and was sentenced to three years of probation. One year of that probation was revoked due to a probation violation. In 2011, he was convicted of a narcotic drug violation in Maricopa County, Arizona and was sentenced to probation. The presentence investigation report ("PSI") does not indicate the length of probation.

[19]     In 2017, Wilke-Breightling was charged with auto theft and driving without ever receiving a license, but those charges were dismissed. In 2018, he was charged with driving while suspended and that case was pending when the PSI was prepared for the instant case. The State has requested and we have taken judicial notice of the fact that Wilke-Breightling pleaded guilty to Class A misdemeanor driving while suspended. We also take notice of the fact that Wilke-Breightling, on an unrelated charge in 2019, was convicted of Level 6 felony resisting law enforcement and Class C misdemeanor reckless driving. He received an aggregate sentence of two years for those offenses to be served concurrently with the sentences in the instant case.

[20]     Further indicative of his penchant for illegal activity is his long history of substance abuse. The PSI reflects that Wilke-Breightling first consumed alcohol at the age of nine and began drinking alcohol on a daily basis at the age of thirteen. Between the ages of eighteen and twenty-eight, he drank a fifth of

alcohol daily. Wilke-Breightling also began using marijuana at the age of nine and has continued to use "a couple of grams" daily since. Appellant's App. Vol. II, p. 59. He began using methamphetamine at the age of thirteen and continued to use approximately one gram daily since then. At the age of twenty-one, he began using two to six ten-milligram pills of Oxycodone daily. When he was twenty-eight years old, he began using two milligrams of Xanax once or twice daily.

[21] Next, we observe that "'the offender risk assessment scores do not in themselves constitute, and cannot serve as, an aggravating or mitigating circumstance.'" *Kayser v. State*, 131 N.E.3d 717, 722 (Ind. Ct. App. 2019) (quoting *J.S. v. State*, 928 N.E.2d 576, 578 (Ind. 2010)). "Our Indiana Supreme Court has explained that scores on a risk assessment instrument 'are *not* intended to serve as aggravating or mitigating circumstances nor to determine the gross length of sentence[.]'" *Id.* (quoting *Malenchik v. State*, 928 N.E.2d 564, 575 (Ind. 2010) (emphasis added)). "Instead, these 'offender assessment instruments are appropriate supplemental tools for judicial consideration at sentencing' and can be used by the trial court 'in formulating the manner in which a sentence is to be served.'" *Id.* Here, Wilke-Breightling's scores were such that he is not a good candidate for probation as he is likely to reoffend. In the past, several times when given the opportunity to serve sentences while on probation, he violated the terms and conditions of his probation.

[22] The nature of the offense analysis compares the defendant's actions with the required showing to sustain a conviction under the charged offense. *Cardwell*, 895 N.E.2d at 1224. We now turn to the nature of Wilke-Breightling's offenses.

[23] Wilke-Breightling was in a position of trust with Hairston. Hairston paid Linda for Wilke-Breightling to mow the lawn in Hairston's absence. Hairston also gave the keys to his truck to Linda and asked Wilke-Breightling to move the truck off the street for him. Instead, Wilke-Breightling took advantage of the situation, broke into Hairston's home, stole items of personal property from the home, including Hairston's truck. He then brought and stored the stolen items of personal property inside his grandmother, Linda's home. He deceived her regarding how he obtained possession of the stolen property, which potentially exposed her to criminal liability as an accomplice in the crimes in her effort to protect him.

[24] Each of the sentences imposed were only slightly enhanced above the advisory sentence and were ordered to be served concurrently. We find nothing in the nature of the offenses and the character of the offender to warrant a downward revision of his sentence.

[25] Wilke-Breightling appears to suggest that the trial court abused its discretion by failing to properly weigh the aggravating and mitigating factors. In particular, he observes that the trial court failed to note that his criminal history included offenses linked to his substance abuse and suggests that the trial court gave little to no weight to his guilty plea.

[26] To the extent Wilke-Breightling asserts that the trial court abused its discretion in the weight it gave to the aggravating circumstance of his criminal history and the mitigating circumstance of his guilty plea, his assertion is not well taken. "A sentencing court cannot abuse its discretion by failing to properly weigh aggravating and mitigating factors." *Sanders v. State*, 71 N.E.3d 839, 843 n.1 (Ind. Ct. App. 2017) (citing *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007)).

[27] Nevertheless, Wilke-Breightling faced four felony charges in the instant case and received concurrent sentences, slightly above the advisory sentence, to run concurrently to other unrelated criminal offenses. He has not been deterred from criminal activity since he began consuming alcohol and drugs at an early age. He has a long and extensive criminal history with numerous attempts at rehabilitation and probation violations. We find nothing in the record to suggest that the trial court's analysis was incorrect.

## Conclusion

[28] Wilke-Breightling's sentences are not inappropriate in light of the nature of his offenses and his character.

[29] Affirmed.

Riley, J., and May, J., concur.